J-S21016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.M.G., AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.M.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 447 EDA 2021 |

Appeal from the Order Entered January 25, 2021
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s):  No. 2019-00090

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 16, 2021**

Appellant, E.M.G.[1], appeals from the order entered on January 25, 2021, denying her petition for the termination of her co-guardianship.  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On May 20, 2019, M.T., R.G., and J.A.G., three of Appellant's six adult children, filed a petition to appoint themselves as co-guardians of the estate and person for Appellant because Appellant was diagnosed with bipolar disorder with psychotic features.  On June 28, 2019, after a hearing wherein Appellant was represented by appointed counsel, the orphans' court adjudicated Appellant incapacitated and appointed the three aforementioned

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] As this appeal deals with Appellant's mental health diagnoses, we use initials as opposed to names so as to protect Appellant's identity and insure privacy. The caption has been amended accordingly.

children as co-guardians of Appellant's person and estate. After the co-guardianship was established, Appellant resided at Love Lighthouse Personal Care Home in Treichlers, Pennsylvania. Thereafter, when improvements in Appellant's mental health condition were observed, the co-guardians secured a rental property located on Hollow Road in East Stroudsburg, Pennsylvania for Appellant.[2] On May 27, 2020, Appellant was evaluated remotely by video by her former treating physician, Dr. Rivikumari Gollapalli. Based upon Appellant's reports that she lived by herself and handled all aspects of daily living, Dr. Gollapalli opined that Appellant could manage her own affairs and finances. On October 3, 2020, however, Appellant was admitted to St. Luke's Hospital pursuant to Section 302 of the Mental Health Procedures Act because she experienced delusions. *See* 50 P.S. § 7302. She was later discharged without an involuntarily commitment. On October 26, 2020, Appellant filed a *pro se* petition seeking a review hearing to terminate the co-guardianship. The orphans' court appointed counsel to represent Appellant, ordered an independent psychiatric evaluation, and held a review hearing on January 8, 2021.

At the review hearing, Appellant presented a letter from Dr. Gollapalli and medical documentation from St. Luke's hospital. Appellant and her friend, Kelly Zimmerman, a licensed practical nurse (LPN), testified. R.G. also

_____

[2] Appellant initially lived alone. In December 2020, one of Appellant's sons moved into the residence to live with Appellant. They both currently reside there.

testified and she presented the court-ordered psychiatric evaluation conducted by Dr. Alyssa Reed on December 15, 2020, medical records dated June 24, 2020, and a medical summary dated July 14, 2020, as well as various Facebook posts authored by Appellant. Dr. Reed's psychiatric evaluation indicated that Appellant has "anxiety disorders, Paranoid Schizophrenia, Bipolar disorder[-]unspecified. She [was] also declining medication and need[ed] to follow up for treatment management[.]" N.T., 1/8/2021, at 4. By opinion and order entered on January 25, 2021, the orphans' court denied Appellant relief and continued the co-guardianship. This timely, counseled appeal resulted.[3]

On appeal, Appellant presents the following issue for our review:

> Whether the [orphans'] court erred in denying [Appellant's] motion to terminate guardianship since there was adequate testimony that [Appellant] is able to care for herself both physically and financially[?]

Appellant's Brief at 4 (superfluous capitalization omitted).

Appellant contends that "she met her burden of establishing by a fair preponderance of the evidence that she has [re]gained her capacity" to care for herself both physically and financially and, therefore, the orphans' court

---

[3] On February 23, 2021, Appellant filed a notice of appeal. On February 23, 2021, the orphans' court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on March 12, 2021. On March 12, 2021, the orphans' court filed a statement pursuant to Pa.R.A.P. 1925(a), relying upon its prior opinion filed on January 25, 2021. On March 23, 2021, Appellant's counsel filed an application to withdraw with this Court. By *per curiam* order entered on May 3, 2021, we denied relief.

erred by failing to terminate the co-guardianship. *Id.* at 11-18. More specifically, Appellant claims that she presented a report from Dr. Gollapalli "dated May 27, 2020, indicating Appellant was alert, oriented and competent to handle her own finances and her estate." *Id.* at 12-13. Appellant "acknowledges that separate evaluations were conducted at her request[,]" but that "those evaluations were conducted during a short period of time, over the telephone, and with providers who had no prior knowledge of Appellant or her mental health capabilities." *Id.* at 13. Relying upon her testimony from the review hearing, Appellant posits that she clearly answered "direct questions without going off on tangents" and is able to live on her own, cook and clean by herself, administer insulin for her diabetes four times a day, and knows she receives a monthly social security check despite being declared incapacitated. *Id.* at 14-15. Appellant asserts that the orphans' court erroneously "put substantial weight on … the fact that Appellant was not taking any psychotropic medication to address her mental health" when there was evidence that she had adverse reactions to the medication prescribed. *Id.* at 15-16. Appellant further argues that the orphans' court erred by relying upon "social media posts authored by Appellant that were directed at or towards public officials and/or inter-county governmental agencies" regarding "her frustration over the guardianship proceedings[.]" *Id.* at 16. Finally, Appellant maintains that the orphans' court erred by relying on testimony that, before the co-guardianship was established, Appellant was financially victimized by a former paramour, "[s]ince there was no other evidence … to suggest []

- 4 -

Appellant had fallen victim to any other financial scams by any other party[.]" *Id.* at 17. Accordingly, Appellant argues that the orphans' court abused its discretion in denying Appellant's petition to terminate the co-guardianship. *Id.* at 18.

An incapacitated person is defined as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he [or she] is partially or totally unable to manage his [or her] financial resources or to meet essential requirements for his [or her] physical health and safety." 20 Pa.C.S.A. § 5501. "The court shall conduct a review hearing promptly if the incapacitated person, guardian or any interested party petitions the court for a hearing for reason of a significant change in the person's capacity, a change in the need for guardianship services or the guardian's failure to perform his [or her] duties in accordance with the law or to act in the best interest of the incapacitated person." 20 Pa.C.S.A. § 5512.2(a). "Except when [a review] hearing is held to appoint a successor guardian, the burden of proof, by clear and convincing evidence, shall be on the party advocating continuation of guardianship or expansion of areas of incapacity." 20 Pa.C.S.A. § 5512.2(b). However, we have also determined that "while the initial burden of proving incapacity is a clear and convincing standard, the incapacitated person has the burden of establishing that he [or she] has regained capacity only by a fair preponderance of the evidence." *In re Estate of Rosengarten*, 871 A.2d 1249, 1255 (Pa. Super. 2005). "The orphans' court's factual findings

receive the same deference accorded factual findings of a jury, but we must ensure that the decision of the court is free from legal error." *Id.* at 1253. "In the case of a petition for removal of a guardian, our Court's role is to determine whether the orphans' court abused its discretion. The power of the orphans' court to remove a guardian is an inherent right, which will not be disturbed unless there is a gross abuse of discretion." *In re Estate of Border*, 68 A.3d 946, 959 (Pa. Super. 2013). "Because the orphans' court sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of discretion." *In re Estate of Zeevering*, 78 A.3d 1106, 1108 (Pa. Super. 2013) (citation omitted).

Here, the orphans' court determined:

In reviewing all of the evidence in this case, [] a plenary guardian is still necessary and the current co-guardians are the best individuals to serve in this capacity. It is clear from the medical evidence, the testimony of co-guardian [R.G.], and especially the testimony of [Appellant], that she has a mental health condition that impairs her ability to make personal decisions and manage her finances. [Kelly] Zimmerman testified that she believes [Appellant] could manage her own affairs. However, she is not qualified to offer a professional opinion,[4] and as such, we accept the testimony as a fact witness the same as [] the other testimony [from] [R.G.] and [Appellant]. Although [] Zimmerman has seen [Appellant] at times and talks to her on the [tele]phone, she does not see [Appellant's] behavior on a daily basis. Therefore, [the orphans' court] placed more weight on the testimony of [R.G.]

_____

4 Zimmerman was not providing Appellant medical care and Appellant did not offer Zimmerman as an expert at the review hearing. N.T, 1/8/2021, at 12. Instead, Zimmerman testified that she "like[d] to check on" Appellant and considered her a good friend. *Id.* at 10.

concerning [Appellant's] ability to address her own needs and finances.

[R.G.] was credible and convincing that her mother has a serious mental health condition, that [Appellant] refuses medication prescribed to help that condition, and that as a result, she cannot manage her own affairs. In addition to the significant history of mental health commitments, lost housing, delusional and irrational behavior, and financial fraud perpetrated on her by others, [Appellant] has continued to exhibit similar behaviors when not on her medications. This condition appears to get better at times, but worsen[ed] more recently. This may be in part to [Appellant's] current refusal to take her medications.

As [R.G.] testified, her mother continues to have delusions about the FBI, about her doctor and the administrator of the personal care home being complicit with each other in trying to kill her, and [she is unable] to live on her own. [Appellant] herself confirmed her delusional thought process when describing her notification to the FBI about the Gambino crime family from what she witnessed as a child allegedly living in the same neighborhood. Her testimony about it in court was disjointed and did not make sense. She also misconstrue[d] her doctor's attempt to give her a long-lasting anti-psychotic shot for her mental health as [an attempt] to kill her. [Appellant] also [criticized,] in a paranoid manner[,] the actions of those at the personal care home where she previously resided and her family and others who claim she has a mental health condition.

[I]t is clear from the record that [Appellant] does not have sufficient funds to live on her own, and she either cannot be accepted into low-income housing and/or refuses to cooperate with agencies that could assist her in that regard, including [Mental Health and Developmental Services] and the Agency on Aging. She also would not be able to transport herself to doctor's appointments, grocery shopping, etc. While [Appellant] maintains that she is able to drive, she does not have the means to afford a vehicle. And, other than family, the only other person that might be able to assist [Appellant] is Ms. Zimmerman, who lives quite a distance from her. [R.G.'s] testimony was convincing that her mother cannot live on her own without the assistance of a guardianship of both her person and estate.

The psychiatric evaluation conducted December 15, 2020 also confirms the continued need for a guardianship. [Appellant's]

thoughts and statements were not organized, she could not stay on topic, and she told grandiose stories the entire session. She was found to have limited insight into her mental health condition and refused to accept a diagnosis of paranoid schizophrenia and bipolar disorder[-]unspecified. [Appellant's] judgment was found to be impaired – moderate and her cognition was distracted with a scattered thought process. The psychiatric evaluation showed a serious mental health condition. Unfortunately, [Appellant's] refusal to accept the diagnosis and accept treatment, including medication, puts her at significant risk if there was no guardianship and she did not have near-constant supervision.

Finally, [Appellant's] own testimony showed the level of her impairment. [Appellant] could not answer [certain] simple questions without [veering] off-topic. She had to be re-directed by her counsel several times and exhibited some signs of paranoia. [Examples of paranoid testimony] included [references to] others entrapping her into hospitalization and the aforementioned attempt on her life by her psychiatric doctor. She also named the personal care administrator as being complicit in that attempt on her life. [Appellant] also denied that a prior paramour, [C.S.], took advantage of her financially, even though testimony at the initial guardianship hearing showed otherwise. She also denies the need for mental health treatment, [claims] that she had [been] false[ly] diagnos[ed], and [claims] that she is not schizophrenic or bipolar. Her insight to her condition is severely limited. While [Appellant] may be able to cook for herself and take care of her personal needs, she is not able to make sound and rational decisions about her needs or her health, and it appears very unlikely that she could live on her own, both from a personal standpoint and certainly financially.

Orphans' Court Opinion, 1/25/2021, at 5-8.

Upon review of the record and applicable law, we agree with the orphans' court assessment. Prior to the co-guardianship, Appellant's mortgage was foreclosed, and she was subsequently evicted twice thereafter, because she relied on her former paramour to pay the couple's living expenses and he did not. N.T., 1/8/2021, at 16-17. Appellant denied that her former

paramour took advantage of her financially. *Id.* at 39. Appellant has not worked since 2008. *Id.* at 17. Her sole income is $940.00 per month which she receives from her deceased husband's social security benefits. *Id.* at 18 and 28. The co-guardians fear that if they did not assist Appellant, she would not have "a stable living situation." *Id.* at 48. A psychiatric evaluation conducted on July 1, 2020 determined that Appellant suffers from paranoid schizophrenia and bipolar disorder and that she was refusing medication and treatment. *Id.* at 4. Appellant testified that she only receives medical care for diabetes and she would not acknowledge that she has been diagnosed with paranoid schizophrenia and bipolar disorder. *Id.* at 45. Instead, Appellant testified that she has been falsely diagnosed as bipolar and schizophrenic and that her children, a personal care facilitator, and doctor were complicit in trying to kill her. *Id.* at 40-44; 55-59. Appellant made references to the FBI and Gambino crime family. *Id.* at 39. Appellant also made false claims on Facebook that local public officials, the trial court, and the co-guardians were part of a conspiracy to implement an illegal guardianship. *Id.* at 54. She believes that local politicians also colluded to silence her from environmental advocacy and speaking out against the fracking industry. *Id.* at 59. Appellant refuses services from the Agency of Aging and Mental Health and Developmental Services. *Id.* at 47, 49-51. Appellant does not have a valid driver's license. *Id.* at 35-36. She exercises limited judgment in keeping her living area clean and keeps rotten food in her refrigerator. *Id.* at 46. Appellant also has periodontal disease and "her teeth are rotting in her

gums[.]" ***Id.*** at 49. The co-guardians are "trying to find the right [psychotropic] medications" for Appellant because she refuses to take them as prescribed due to adverse reactions and various side-effects. ***Id.*** at 53.

In this case, the co-guardians proved by clear and convincing evidence that the continuation of Appellant's co-guardianship was necessary. Likewise, Appellant failed to prove by a preponderance of the evidence that she has regained the capacity for autonomous self-care. Here, the orphans' court found the psychiatric evaluation and R.G.'s testimony more credible than the evidence presented by Appellant. We will not usurp those credibility determinations. Based upon all of the foregoing evidence, we conclude that Appellant's ability to receive and evaluate information is impaired to such a significant extent that she is unable to manage her financial resources or meet the essential requirements for her physical health and safety. As such, the orphans' court did not abuse its discretion in denying Appellant's request to terminate the co-guardianship. Accordingly, Appellant's sole appellate issue fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2021