J-S54007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: GEORGE S. RILEY, JR., AN INCAPACITATED PERSON | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GEORGE S. RILEY, JR. | : | No. 447 MDA 2019 |

Appeal from the Decree Entered February 15, 2019
In the Court of Common Pleas of York County Orphans' Court at No(s):
6719-0022

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 12, 2019**

George S. Riley, Jr. appeals from the February 15, 2019 order that decreed him an incapacitated person and appointed a professional plenary guardian of his person and estate.  We remand with instructions.

This action was initiated when WellSpan Health, a non-profit corporation providing care for Mr. Riley, filed a petition for adjudication of incapacity and appointment of guardian pursuant to 20 Pa.C.S. § 5511.  Therein, WellSpan Health indicated that Mr. Riley "suffers from a major neurocognitive disorder and schizophrenia along with various physical health problems."  Petition, 1/4/19, at ¶ 4.  It alleged that, as a result of these conditions, Mr. Riley is unable to manage his finances or to make responsible decisions relating to his finances.  *Id*. at ¶ 7.  Further, WellSpan Health averred that Mr. Riley is unable to make responsible decisions about, or communicate his needs concerning, his person, health, welfare, and safety.  *Id*. at ¶¶ 15-16.  WellSpan Health contended  that  there  were  no  less-restrictive  alternatives  than  the

appointment of a guardian, and proposed professional guardian Gary L. Landis because Appellant had no suitable and interested family members. *Id*. at ¶¶ 3, 9, 11, 18, 20.

The orphans court issued a preliminary decree that, *inter alia*, appointed counsel to represent Mr. Riley and scheduled a hearing on the petition. At the hearing, WellSpan Health presented the testimony of Stephen L. Diltz, M.D., and Ashlyn Vorhees. Dr. Diltz, who became familiar with Mr. Riley at York Hospital and whose qualifications were stipulated to by Mr. Riley, testified that Mr. Riley is "severely impaired." N.T. Hearing, 2/15/19, at 6. Although Mr. Riley has a long-standing diagnosis of schizophrenia, he was no longer on specific medication for that condition and had not been "hallucinatory or delusional." *Id*. Rather, Dr. Diltz indicated that Mr. Riley "has presented mostly cognitively impaired" such that his abilities to make decisions regarding his health, safety, welfare, and personal finances are "severely impaired." *Id*. at 6-7. Mr. Riley cannot process information properly and keep his thinking organized. *Id*. at 11-12. Mr. Riley's scores on cognitive assessment tests given on December 18, 2018, and December 26, 2018, were fifteen out of thirty and zero out of thirty, respectively. *Id*. at 10. Dr. Diltz opined that Mr. Riley is not capable of managing and administering his medications, and instead requires twenty-four-hour supervision. *Id*. at 7.

Ms. Vorhees is a trauma social worker at York Hospital who assesses patients' mental health, housing situations, community supports, and

discharge planning. *Id*. at 14. She was involved in WellSpan Health's decision to pursue a guardianship for Mr. Riley. Ms. Vorhees testified that Mr. Riley is cognitively impaired, with disorganized thinking. *Id*. Mr. Riley is a long-time alcoholic whose daily drinking "impairs his ability to be safe and to make his food and be independent." *Id*. at 18. For example, Mr. Riley "caught himself on fire" while drinking, and was admitted to York Hospital with rib fractures after he jumped out of the way of a truck that nearly hit him because he "was intoxicated and was in the street." *Id*. at 15-16. Furthermore, Mr. Riley absconded from the hospital at one point, and remains "an elopement risk from any facility[.]" *Id*. at 15.

Ms. Vorhees stated that Mr. Riley lives with a roommate, and has a landlord who "is very supportive." *Id*. at 14. However, Mr. Riley had no one to pick him up from his last hospitalization or assist in a safe discharge plan. *Id*. at 15. Ms. Vorhees believes that Mr. Riley's placement in a controlled-care setting with a formal guardianship is "absolutely" necessary. *Id*. The therapists at York Hospital recommended a skilled nursing facility; however, Mr. Riley's status as a lifetime sex offender registrant "presents a challenge relative to placement[.]" *Id*. Ms. Vorhees acknowledged, however, that Mr. Riley had been well fed while living with his roommate, that he is able to walk and tend to his own personal hygiene, and that his landlord serves as a representative payee to receive Mr. Riley's checks. *Id*. at 18-19.

Mr. Riley testified in opposition to the finding of incapacity. However, in so doing Mr. Riley unintentionally corroborated the allegations against his capacity. Mr. Riley accurately stated his date of birth, but offered an age that was off by several years. *Id*. at 21-22. He admitted that a "frying pan went off on me and exploded" when he had tried to cook for himself while he watched television. *Id*. at 22. Since then, his roommate does all of the cooking, but the roommate is gone every day for work between 7:00 and 4:00. *Id*. at 22, 26. In describing how his landlord helps with his finances, Mr. Riley indicated that he had become nearly $11,000 in debt upon managing his own money, but was no longer in debt because the landlord paid it for him. *Id*. at 23.

At the conclusion of the hearing, the orphans' court indicated that it found clear and convincing evidence that Mr. Riley suffers from a cognitive disorder and "is incapacitated to a significant extent[.]" *Id*. at 30. The court accordingly appointed Mr. Landis, WellSpan Health's proposed guardian, to whose qualifications Mr. Riley stipulated. *Id*. at 20, 31. Mr. Riley immediately expressed on the record his desire to challenge the decision of the orphans' court, and this timely appeal followed.

Mr. Riley presents one question for our consideration: "Whether the [orphans' c]ourt improperly found there was sufficient evidence to support the adjudication of incapacity as to [Mr. Riley]?" Appellant's brief at 4.

We begin with a review of the applicable legal principles.

- 4 -

The appointment of a guardian lies within the discretion of the trial court and will be overturned only upon an abuse of discretion. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*In re Duran*, 769 A.2d 497, 506 (Pa.Super. 2001) (cleaned up).

Our legislature has provided that, upon clear and convincing evidence of incapacity, an orphans' court may appoint a guardian of the person and/or estate. *See* 20 Pa.C.S. § 5511(a). An incapacitated person is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

The legislature has enumerated the following specific considerations and findings necessary to the resolution of a guardianship petition by the orphans' court:

**(a) Determination of incapacity.**--In all cases, the court shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

- 5 -

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

**(b) Limited guardian of the person.**--Upon a finding that the person is partially incapacitated and in need of guardianship services, the court shall enter an order appointing a limited guardian of the person with powers consistent with the court's findings of limitations, which may include:

(1) General care, maintenance and custody of the incapacitated person.

(2) Designating the place for the incapacitated person to live.

(3) Assuring that the incapacitated person receives such training, education, medical and psychological services and social and vocational opportunities, as appropriate, as well as assisting the incapacitated person in the development of maximum self-reliance and independence.

(4) Providing required consents or approvals on behalf of the incapacitated person.

**(c) Plenary guardian of the person.**--The court may appoint a plenary guardian of the person only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

**(d) Limited guardian of the estate.**--Upon a finding that the person is partially incapacitated and in need of guardianship services, the court shall enter an order appointing a limited guardian of the estate with powers consistent with the court's finding of limitations, which shall specify the portion of assets or income over which the guardian of the estate is assigned powers and duties.

**(e) Plenary guardian of the estate.**--A court may appoint a plenary guardian of the estate only upon a finding that the person

is totally incapacitated and in need of plenary guardianship services.

20 Pa.C.S. § 5512.1.

We now consider Mr. Riley's arguments in light of the above law. Mr. Riley contends that the orphans' court entered its order appointing plenary guardians of both his estate and person upon insufficient evidence. Appellant's brief at 10-11. He maintains that the mere diagnoses of conditions does not automatically warrant a finding of incapacity, and notes that Dr. Diltz acknowledged that Mr. Riley's schizophrenia is managed without medication. *Id*. at 10. Mr. Riley suggests that the record evidences his ability to make and communicate decisions. *Id*. at 11. He further argues that the orphans' court should have considered his community supports in determining that plenary guardianship was warranted. *Id*.

Upon review of the record, we conclude that the orphans' court has not provided us with sufficient information to permit appropriate review. As outlined above, § 5512.1 requires the orphans' court to favor limited guardianship, mandates the making of specific factual findings regarding partial or total incapacity, and allows the appointment of plenary guardians **only** when the court finds by clear and convincing evidence that the person is **totally** incapacitated. *Id*. at § 5512.1(a)(6), (c), (e). The analysis of the orphans' court appears to acknowledge on the one hand that Mr. Riley is not totally incapacitated, but nonetheless concluded that, for his safety,

appointment of plenary guardians was in his best interests. The stated

reasoning of the orphans' court is as follows:[1]

> In this matter, obviously, the court has to make a determination by clear and convincing evidence. We did hear from Mr. Riley who testified. His thoughts were somewhat rambling. He was impulsive in trying to get his point across, which, frankly, is not particularly unusual in this setting. The court sees that a lot from individuals who are before the court.
>
> . . . .
>
> In a vacuum, the court certainly would not conclude that Mr. Riley's testimony or the nature in which it was given today would support determination that he's incapacitated; however, with the background provided by Dr. Diltz, the mental testing, the diagnosis, we can conclude by clear and convincing evidence that Mr. Riley is incapacitated to a significant extent, that he would be **partially** or totally be unable to manage his financial resources.
>
> We do note that he **appears to be able to provide for his physical well-being**, however, that would go more to the nature of any placement that may occur and not necessarily to our decision regarding his capacity. We, therefore, conclude by clear and convincing evidence that Mr. Riley does suffer from major cognitive disorder. As we indicated, we do believe that he would have difficulty in managing his finances, and, in fact, Mr. Riley just admitted that he had some difficulty in the past managing finances.
>
> . . . .
>
> If Mr. Riley had 24-hour care at his residence, we would feel a lot more comfortable in determining that **even though he may be incapacitated, he might be able to** -- we may be able to appoint someone else other than Mr. Landis as a guardian, however, the incident with a frying pan, the fact that he's

---

[1] The orphans' court did not author an opinion detailing its findings and reasoning, instead referring us to the transcript of the guardianship hearing. ***See*** Rule 1925(a) Statement, 4/22/19 (citing N.T. 2/15/19, at 28-31).

absconded from the hospital causes the court significant concern about allowing him to return to his present housing situation.

N.T., 2/15/19, at 28-31 (unnecessary capitalization omitted; emphases added).

"[A] statute of this nature places a great power in the court. The court has the power to place total control of a person's affairs in the hands of another." ***In re Hyman***, 811 A.2d 605, 608 (Pa.Super. 2002) (internal quotation marks omitted). Consequently, "[a] finding of mental incompetency is not to be sustained simply if there is any evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency." ***Id***. (internal quotation marks omitted). Moreover, a court considering a guardianship must be "guided by a scrupulous adherence to the principles of protecting the incapacitated person by the least restrictive means possible." ***In re Estate of Rosengarten***, 871 A.2d 1249, 1255 (Pa.Super. 2005). The law is clear that "the intentions of the incapacitated person are to be honored to the fullest extent possible." ***Id***.

Mindful of the applicable law, we cannot affirm the complete stripping of Mr. Riley's agency as to his person and his finances upon such an equivocal statement by the orphans' court as to the extent of Mr. Riley's incapacity. ***See*** 20 Pa.C.S. § 5512.1(c) and (e) (permitting the appointment of plenary guardians of the person and estate, respectively, "only upon a finding that the person is totally incapacitated and in need of plenary guardianship services").

Furthermore, the orphans' court has not identified for this Court its specific findings as to the six factors enumerated in § 5512.1(a). Of particular import is the court's discussion of § 5512(a)(3) (requiring the court to consider the availability of friends and other supports) in light of the evidence concerning the friends who are supporting Mr. Riley, such as his landlord to whom Mr. Riley had recently given a power of attorney to allow him to assist with finances.

Accordingly, we remand for the orphans' court to author an opinion that addresses each of the six § 5512.1(a) considerations, states an unequivocal finding as to nature and extent of Mr. Riley's incapacity, and explains its reasons for concluding that only a plenary guardianship is sufficient to meet Mr. Riley's needs, rather than a limited guardianship as is expressly preferred by § 5512(a)(6).

Case remanded with instructions. Panel jurisdiction retained.

Judge Dubow joins the memorandum.

Judge Lazarus concurs in result.