J-S30034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.L., AN ALLEGED INCAPACITATED PERSON | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | | No. 582 MDA 2021 |

Appeal from the Order Entered April 16, 2021
In the Court of Common Pleas of Centre County Orphans' Court at No(s):
2021-0271

BEFORE: BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED JANUARY 7, 2022**

Appellant, J.L., appeals an order of the Orphans' Court Division of the Court of Common Pleas of Centre County (Orphans' Court) adjudicating him to be an incapacitated person and appointing a guardian for his person. For the reasons set forth below, we vacate and remand.

Appellant is a 57-year-old inmate incarcerated at the State Correctional Institution at Rockview (SCI-Rockview) who suffers from dementia. On April 13, 2021, Richard Ellers, the Corrections Health Care Administrator for SCI-Rockview, filed a Petition for Adjudication of Incapacity and Appointment of a Limited Guardian of the Person with the Orphans' Court seeking an adjudication that Appellant is an incapacitated person under 20 Pa.C.S. §§

_____

[*] Retired Senior Judge assigned to the Superior Court.

5511 and 5512.1 and seeking appointment of himself as guardian of the person of Appellant.

On April 16, 2021, the Orphans' Court held a hearing at which Ellers testified and Appellant, represented by counsel, spoke. Ellers testified to his responsibilities and interaction with inmates as SCI-Rockview's healthcare administrator and to his willingness to serve as Appellant's guardian, and testified that he serves as guardian for several other inmates and has experience and training as a licensed nursing home administrator. N.T. at 3-8. With respect to the issue of whether Appellant was incapacitated, Ellers testified that Appellant

> most times is pleasant in his demeanor. He's not aggressive in any nature. However, he does at times have difficulty understanding what we might be trying to explain to him and also the long-term ramifications of the decisions that we might be making. Therefore, our providers wanted us to pursue this authority to work with him and help make decisions and make sure his welfare is protected.

*Id.* at 5. Ellers testified that he attempted to contact Appellant's relatives concerning guardianship for Appellant and that he spoke to Appellant's sister, but that the other relative, Appellant's nephew, did not return his call. *Id.* at 6, 8. Ellers testified that Appellant's sister was willing for Ellers to serve as Appellant's guardian, but did not testify that she was unwilling or unable to serve as Appellant's guardian. Ellers testified:

> [Appellant's sister] and I had a lengthy conversation about the proceedings, and we discussed her involvement, and she agreed. She said it would be sufficient that we would handle these responsibilities in his best interest.

- 2 -

*Id.* at 6. Ellers was unsure whether Appellant had an advance healthcare directive and thought that Appellant may have designated his sister to make medical decisions for him, testifying:

> Q. Does [Appellant] have any advanced healthcare directives, or has he designated anyone to serve as a surrogate over his medical care?
>
> A. I have to check his current records. I believe his sister is designated as his -- for the advanced directive and notification of next of kin.

*Id.* at 7.

An expert report of SCI-Rockview's medical director, Vernon H. Preston, M.D., was admitted with Appellant's agreement pursuant Pa.O.C.R. 14.3.[1] In that report, Dr. Preston opined that Appellant had moderate to severe dementia, that Appellant's "short term memory does not allow him to understand long term decisions" and that he was totally impaired in his ability to give informed consent or make medical decisions for himself. Preston Expert Report at 2-5. Dr. Preston also opined in his report that Appellant needs some help but is not totally impaired in communicating decisions. *Id.* at 3. Dr. Preston stated in his report that the last time he saw and evaluated

---

[1] The Petition for Adjudication of Incapacity and Appointment of a Limited Guardian of the Person purported to attach this report, but instead attached an expert report concerning a different SCI-Rockview inmate. This error was corrected by a Notice of Errata filed two days before the hearing and it appears from the Orphans' Court opinion that the report admitted at the hearing was the expert report concerning Appellant, not the report erroneously attached to the petition.

Appellant was in July 2020, approximately nine months before the incapacity and guardianship hearing. *Id.* at 2. While the expert report listed tests that had been administered to determine Appellant's cognitive abilities, it reported only the scores of those tests and did not provide the test results, contrary to the requirements of the Orphans' Court Rules and the instructions on the expert report form, which direct the expert to attach the test results. *Id.*; *see also* Pa.O.C.R. 14.3 (providing for admission of report "of an expert using the form provided in the Appendix to these rules"); Pa.O.C.R. Form G-06, Question No. 6c (directing the expert to "[a]ttach test results, not just the score"). Dr. Preston also noted as relevant to the court's determination of incapacity that Appellant was "willing to have a guardian appointed to help him in these matters." Preston Expert Report at 5.

Appellant stated at the hearing that he wanted his sister or his nephew to be his guardian and that he did not want Ellers to be his guardian. N.T. at 9-10. Appellant also stated:

> [Appellant's Counsel]: And do you think you need a medical guardian?
>
> [Appellant]: I don't think I do. I mean, I do have dementia, and I forget things, but I'm not fully, you know, incompetent. I can write letters to my family. I can call on the phone, make requests and everything.

*Id.* at 10-11.

At the end of the hearing, the Orphans' Court granted the Petition for Adjudication of Incapacity and Appointment of a Limited Guardian of the

Person and entered an order determining that Appellant was incapacitated and appointing Ellers as guardian for the person of Appellant. N.T. at 12; Orphans' Court Order, 4/16/21. In its order, the Orphans' Court did not limit the guardian's powers to assisting Appellant in medical decisions and providing informed consent for treatment to which Appellant did not object, but instead granted Ellers power to make all medical decisions for Appellant, "including the acceptance or **refusal of recommended treatment** related to physical or mental health needs," and ordered that "[a]ny previously executed powers of attorney or health care powers of attorney of [Appellant] are rendered ineffective, and any agents authorized to act under such documents are divested of such authority to the extent that their authority conflicts with the authorizations herein granted to Richard Ellers as guardian." Orphans' Court Order, 4/16/21, at ¶¶2, 3 (emphasis added).

Appellant timely appealed and argues that the evidence at the hearing was insufficient to support the Orphans' Court adjudication that he was incapacitated and appointing a guardian with control over all of his medical decisions. In reviewing the Orphans' Court's order here, we are bound by its findings that are based on competent evidence, but are not bound by its conclusions of law. *In re Peery*, 727 A.2d 539, 540 (Pa. 1999).

Chapter 55 of the Probate, Estates and Fiduciaries Code provides that a person may be adjudicated incapacitated and a guardian of the person may be appointed only if the petitioner seeking such an adjudication and

appointment shows by clear and convincing evidence that the person's ability to receive and evaluate information and communicate decisions is impaired to the extent that he is partially or totally unable to meet essential requirements for his physical health and safety and that he is in need of a guardian. 20 Pa.C.S. § 5501; 20 Pa.C.S. § 5511(a); 20 Pa.C.S. § 5512.1(b), (c); **Peery**, 727 A.2d at 541; **In re Hyman**, 811 A.2d 605, 608 (Pa. Super. 2002). Even if the court finds by clear and convincing evidence that the person is incapacitated, the guardianship ordered must be the least restrictive means of protecting the incapacitated person and the incapacitated person's intentions and wishes must be honored to the extent possible. 20 Pa.C.S. § 5511(f); 20 Pa.C.S. § 5512.1(a), (b), (c); **In re Estate of Rosengarten**, 871 A.2d 1249, 1255, 1257 (Pa. Super. 2005). Section 5512.1 of the Probate, Estates and Fiduciaries Code specifically requires that the court, in determining whether the person is incapacitated and the extent of the guardianship, "shall consider and make specific findings of fact concerning: … The need for guardianship services… in light of the existence, if any, of advance directives such as durable powers of attorney." 20 Pa.C.S. § 5512.1(a)(3).[2]

---

[2] Neither Appellee nor the Orphans' Court contend that these requirements are inapplicable to prison inmates or that the Orphans' Court could evaluate the evidence concerning Appellant's need for a guardian or the scope of a guardianship order differently because he is an inmate.

The Orphans' Court's broad guardianship order here violates these requirements. The Orphans' Court, based on the expert report of Dr. Preston, found only that "there was clear and convincing evidence presented which establishes Appellant is at least partially incapacitated and appointment of a limited guardian is necessary to assure Appellant receives appropriate medical and psychological services and to provide required consent or approval on behalf of Appellant." Orphans' Court Opinion at 3. Its order, however, was not limited in scope or tailored to address the problem of Appellant's inability to give informed consent for medical treatment that he wants to receive. Rather, the Orphans' Court's order deprived Appellant of all ability to make medical decisions, including decisions to refuse treatment. Orphans' Court Order, 4/16/21, at ¶2.

Moreover, although there was a suggestion in Ellers' testimony that Appellant may have an advance medical directive or medical power of attorney executed before he was incapacitated and Ellers admitted that he could obtain that information, N.T. at 7, the Orphans' Court did not consider the effect of such a directive or require Ellers, the party seeking to be appointed as guardian, to provide that information. Instead, it ordered that any healthcare powers of attorney executed by Appellant "are rendered ineffective," without regard to whether such powers of attorney expressed Appellant's wishes concerning medical care and whether they were executed at a time that he was competent to make such decision. Orphans' Court Order, 4/16/21, at ¶3.

In addition, the Orphans' Court based its determination that less restrictive alternatives were not available on assertions that were not supported by any evidence at the hearing. The court concluded that less restrictive alternatives to its guardianship order did not exist because, *inter alia*, "Appellant does not have any living next of kin willing to serve as guardian or to make necessary medical decisions" and "attempts to find a living next of kin willing to serve as guardian have been exhausted." Orphans' Court Opinion at 2, 4. While the petition claimed that Appellant "does not have any living next of kin willing to serve as guardian or to make necessary medical decisions," Petition for Adjudication of Incapacity and Appointment of a Limited Guardian of the Person ¶¶9(c), 13, the testimony at the hearing showed that Appellant has a sister, whom Appellant wanted as his guardian, and did not show that she is unwilling to serve as a guardian. The only evidence concerning Appellant's sister's willingness or unwillingness to act as Appellant's guardian was Ellers' testimony that she was willing, after he spoke at length to her, to have Ellers act as Appellant's guardian. N.T. at 6. Such testimony that the person seeking to be appointed as guardian has persuaded a relative to not object to his appointment as guardian is not testimony or evidence that the relative is unwilling to act as a guardian or healthcare power of attorney.

Because the Orphans' Court failed to consider whether Appellant has an advance healthcare directive or healthcare power of attorney and its finding

that there are no less restrictive alternatives is not supported by the record, its broad order appointing Ellers as Appellant's guardian, depriving Appellant of all rights to refuse medical treatment, and negating any prior healthcare powers of attorney contravenes Chapter 55 of the Probate, Estates and Fiduciaries Code and cannot stand. Accordingly, we vacate the Orphans' Court order of April 16, 2021, and remand this case to the Orphans' Court for a new hearing at which it shall hear evidence on whether there are less restrictive alternatives, including evidence on whether and what advance healthcare directives and healthcare powers of attorney Appellant has executed and evidence concerning whether Appellant's sister is willing to act as Appellant's guardian or healthcare power of attorney.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2022

- 9 -