J-S16035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF H.T., AN ALLEGED INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.T. | : : : : : : : : | |
| | : | No. 747 MDA 2021 |

Appeal from the Order Entered May 12, 2021
In the Court of Common Pleas of Lackawanna County Orphans' Court at
No(s):  2021-184

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: AUGUST 25, 2022**

Appellant, H.T., appeals from an order of the Orphans' Court Division of the Court of Common Pleas of Lackawanna County (Orphans' Court) adjudicating him to be an incapacitated person and appointing his son (Son) as plenary guardian of his person and estate.  For the reasons set forth below, we affirm.

Appellant is a 72-year-old man who lives alone in an apartment in Scranton, Pennsylvania.  Appellant suffers from alcoholism and short-term memory impairment and a number of other serious medical conditions, including congestive heart failure and a past history of stroke and heart attacks.  Report of Dr. Richard Fischbein (Fischbein Report) at 13-14, 18, 21; N.T., 2/11/21, at 8, 20.  Appellant has two adult children, Son, who lives in

---

[*] Retired Senior Judge assigned to the Superior Court.

California, and a daughter who lives in the Netherlands (Daughter). N.T., 2/11/21, at 5, 56; N.T., 5/4/21, at 19, 25. Appellant and his wife have been separated for 12 years and his wife lives in the Netherlands. N.T., 5/4/21, at 19, 26. In July 2020, Appellant gave Son a power of attorney and gave Son, Daughter, and an attorney a jointly held health care power of attorney. N.T., 2/11/21, at 5, 24-25.

In or about early February 2021, Son filed an emergency petition seeking an adjudication that Appellant is an incapacitated person under 20 Pa.C.S. § 5511 and seeking appointment of himself as plenary guardian of the person and estate of Appellant. The Orphans' Court, on February 8, 2021, appointed Son temporary plenary guardian of Appellant's person and estate and appointed counsel to represent Appellant. Orphans' Court Order, 2/8/21. On February 11, 2021, the Orphans' Court held a hearing on the guardianship petition at which Son, Daughter, and an expert witness, Vincent Carolan, testified. Appellant was not at the hearing, but was represented by his appointed counsel, who had not yet been able to talk to him. N.T., 2/11/21, at 3-4.

Son testified that when he obtained the power of attorney, Appellant was living in unsanitary conditions, in his own urine and feces, and that he had Appellant's apartment fumigated and cleaned and hired a person to be with Appellant 10 hours a day to help Appellant with getting dressed, personal hygiene, taking his medications, and other activities, and to cook meals for

Appellant. N.T., 2/11/21, at 6-11, 28-30. Son testified that Appellant is on 12 different medications and does not take them properly except under the caregiver's supervision and that Appellant had been hospitalized more than six times in the last year. *Id.* at 10-11, 22, 31. Son testified that although he was able to work with Appellant's doctors through the power of attorney, Appellant does not understand his medical conditions and sometimes communicates with his doctors without letting Son know. *Id.* at 27, 30. Son also testified that Appellant drives a car despite not having a valid driver's license. *Id.* at 10.

In addition, Son testified that after he became Appellant's power of attorney, he learned that Appellant was not opening his mail and paying his bills and that Appellant had unpaid federal taxes of over $400,000, which Son paid. N.T., 2/11/21, at 6, 29. Son testified that Appellant was making very frequent wire transfers in amounts of $500 to $3,000 or more to people who solicited him online and that Appellant did not understand the frequency or the total amount of these transfers, which exceeded $500,000. *Id.* at 11-19; Exs. 2, 3, 4. Son testified that he understood and was willing to accept the responsibilities of guardianship. *Id.* at 32. Daughter testified that she communicates frequently with Appellant by phone and text message and that she did not object to Son being appointed as guardian for Appellant. *Id.* at 56-57.

Carolan, who was a licensed clinical social worker and alcohol and drug counselor and was not a physician or licensed psychologist, testified as an expert in alcohol addiction and medication mismanagement. N.T., 2/11/21, at 34, 38-39, 55; Ex. 1 at 1. Carolan did not meet or speak with or perform any tests on Appellant and based his opinions on his review of Appellant's medical records and interviews with Son, a longtime friend of Appellant, and Appellant's caregiver. *Id.* at 38, 40-41, 50-52. Carolan testified that, in his opinion, medications that Appellant was taking had a significant risk of catastrophic results, especially if taken in combination with alcohol, and, in combination with alcohol, would cause Appellant to be unable to recall things he has done and decisions he has made. *Id.* at 42-46, 49. Carolan opined that Appellant was not capable of independent living and lacks the capacity to take care of himself and to make important decisions. *Id.* at 44-48.

Following this hearing, the Orphans' Court entered an order making a final adjudication that Appellant is an incapacitated person and appointing Son as plenary guardian of Appellant's person and estate. Orphans' Court Order, 2/12/21. On or about March 1, 2021, Appellant, through new counsel, petitioned for orders authorizing the retaining of new counsel for Appellant and the retaining of a psychiatrist, Dr. Richard Fischbein, to conduct an evaluation of Appellant. Following a hearing on March 5, 2021, the Orphans' Court rescinded the February 12, 2021 guardianship order and entered orders reappointing Son as temporary emergency guardian of Appellant's person and

estate and granting Appellant's petition for new counsel and for retention of Dr. Fischbein to perform an evaluation of him. N.T., 3/5/21, at 17-19; Orphans' Court Rescinding Order, 3/5/21; Orphans' Court Temporary Guardianship Order, 3/5/21; Orphans' Court Order, 3/9/21.

On May 4, 2021, the Orphans' Court held a final hearing on Son's guardianship petition. At this hearing, which Appellant attended, the parties stipulated to the admission of Dr. Fischbein's report of his evaluation of Appellant, Son gave additional testimony, and Appellant's counsel read a statement prepared by Appellant.

Dr. Fischbein reported that he based his evaluation and opinions on his in-person interview of Appellant, interviews of Son, the caregiver, and two longtime friends of Appellant, and review of the testimony from the February 2021 hearing, Appellant's medical records, and other documents. Fischbein Report at 1-20. Dr. Fischbein concluded that Appellant suffers from permanent short-term memory impairment caused by his alcoholism and that his insight and judgment are so limited that he needs 24-hour, 7-days-a-week supervision and care. *Id.* at 21-24. Dr. Fischbein opined that Appellant needed a permanent plenary guardian of both his person and his estate and that his need for guardianship was unlikely to change. *Id.* at 21, 23.

Son testified that since his appointment as temporary guardian, he had arranged for round-the-clock in-home care for Appellant and that Appellant needed such care and had benefited from it. N.T., 5/4/21, at 8-11. Son

testified that he travels to Pennsylvania for Appellant's medical appointments and is able and willing to travel to Pennsylvania on short notice. *Id.* at 11-12. Son also testified that permanent rather than temporary guardianship was needed for the guardianship to be fully recognized in the Netherlands, where some of Appellant's assets are. *Id.* at 15-19.

In the statement read to the court by his counsel, Appellant expressed appreciation for the efforts that Son had made to obtain assistance for him in his home and for the caregivers that Son had hired. N.T., 5/4/21, at 32, 36, 38. While Appellant requested that the court order only a 90-day extension of the temporary guardianship or a limited guardianship, he stated that he preferred for Son to be his guardian. *Id.* at 35-38. Following his counsel's reading of the statement, Appellant confirmed that the statement accurately reflected his wishes and feelings. *Id.* at 42.

On May 12, 2021, following this hearing, the Orphans' Court entered an order adjudicating Appellant incapacitated and in need of a plenary guardian of his person and estate and appointing Son as the plenary guardian of Appellant's person and estate. Orphans' Court Order, 5/12/21. On June 9, 2021, Appellant timely appealed.

Appellant presents the following issues for our review:

1. Whether the trial court erred in appointing [Son], a resident of California, as Guardian of the Person?

2. Whether the trial court erred in appointing a plenary guardian where a limited guardianship is appropriate?

3. Whether the trial court erred in failing to enter findings of fact or conclusions of law in this case?

Appellant's Brief at 4 (suggested answers omitted). In reviewing the Orphans' Court's order, we are bound by its findings that are based on competent evidence, but are not bound by its conclusions of law. *In re Peery*, 727 A.2d 539, 540 (Pa. 1999).

Chapter 55 of the Probate, Estates and Fiduciaries Code (PEF Code) provides that a person may be adjudicated incapacitated and a guardian of the person and estate may be appointed only if the petitioner seeking such an adjudication and appointment shows by clear and convincing evidence that the person's ability to receive and evaluate information and communicate decisions is impaired to the extent that he is unable to manage his financial resources and meet essential requirements for his physical health and safety and that he is in need of a guardian. 20 Pa.C.S. § 5501; 20 Pa.C.S. § 5511(a); 20 Pa.C.S. § 5512.1(b)-(e); *Peery*, 727 A.2d at 541. Section 5512.1(a) of the PEF Code requires that the court consider and make findings of fact concerning the following: 1) the condition or disability which impairs the person's capacity to make and communicate decisions, 2) the extent of the person's capacity to make and communicate decisions, 3) the need for guardianship services in light of the availability of family, friends and other supports and the existence of advance directives or trusts, 4) the type of guardian, limited or plenary, of the person or estate needed based on the

person's condition or disability and his capacity to make and communicate decisions, and 5) the duration of the guardianship. 20 Pa.C.S. § 5512.1(a).

Even if the court finds by clear and convincing evidence that the person is incapacitated, the guardianship ordered must be the least restrictive means of protecting the incapacitated person and the incapacitated person's intentions and wishes must be honored to the extent possible. 20 Pa.C.S. § 5512.1(a)(6), (b)-(e); *In re Estate of Rosengarten*, 871 A.2d 1249, 1254-55, 1257 (Pa. Super. 2005). A plenary guardian of the person and estate, rather than a limited guardian, may be appointed only if court finds that the person is totally unable to manage his financial resources and meet essential requirements for his physical health and safety. 20 Pa.C.S. § 5501; 20 Pa.C.S. § 5512.1(c), (e).

We first address Appellant's second and third issues, which are interrelated and assert that the Orphans' Court erred in ordering a plenary guardianship of Appellant's person and estate. In his second issue, Appellant argues that the record supported only appointment of a limited guardian, not a plenary guardian. In his third issue, Appellant contends that the Orphans' Court failed to make the findings required by Section 5512.1(a), particularly with respect to the availability of supports that reduce the need for guardianship. Neither of these issues merits relief.

Contrary to Appellant's contentions, the record supports the Orphans' Court's determination that a plenary guardian of Appellant's person and

estate, rather than limited guardianship, was necessary. The evidence introduced at the two hearings held by the court amply supports the conclusion that Appellant was both totally unable to manage his financial resources and totally unable to meet essential requirements for his physical health and safety. The testimony of Son and the records of Appellant's financial transactions showed that Appellant ignored and failed to pay bills and debts, including over $400,000 in federal taxes, and that he was repeatedly giving away large sums of money to people he did not know without understanding how much money he was giving away. N.T., 2/11/21, at 6, 11-19, 29; Exs. 2, 3, 4. The testimony of Son and report of Dr. Fischbein showed that Appellant was completely unable to take care of himself and needed 24-hour, 7-days-a-week care and supervision. N.T., 2/11/21, at 6-11, 20-22, 29-31; Fischbein Report at 21-24. Dr. Fischbein specifically opined that Appellant suffered from permanent short-term memory impairment and limited comprehension and judgment that necessitated such supervision and care, that Appellant's cognitive impairment is highly unlikely to improve, and that Appellant needed a plenary guardian of both his person and estate. Fischbein Report at 21-24.

Appellant argues that Son's providing of caregivers has improved his condition and eliminates the need for plenary guardianship. This argument fails for two reasons. First, Dr. Fischbein's opinions concerning Appellant's impairment and need for plenary guardianship were based on his evaluation

of Appellant's condition after Appellant was already receiving care and supervision arranged by Son. Fischbein Report at 1, 15-20. Second, the round-the clock care and supervision that Appellant was receiving at the time of the May 4, 2021 hearing, which Appellant argues are a sufficient support system, are the result of Son's plenary guardianship under the court's temporary guardianship order, not an alternative to plenary guardianship. N.T., 5/4/21, at 8-11.

Appellant's contention that the Orphans' Court failed to make findings of fact is also inaccurate. The Orphans' Court, in its May 12, 2021 guardianship order, made the specific findings of fact required by Section 5512.1(a). Orphans' Court Order, 5/12/21, at 2-3 ¶¶1-8. In particular, the Orphans' Court considered Appellant's improved condition and the care being provided and found that this care was a result of the plenary temporary guardianship and that no less restrictive alternative to plenary guardianship was sufficient. *Id.* ¶¶5, 8; N.T., 5/4/21, at 47-50.

In his remaining, first issue, Appellant argues that the Orphans' Court erred in appointing Son as his guardian because Son lives thousands of miles away and the relationship between Appellant and son is allegedly hostile. The selection of a guardian for an incapacitated person is a matter within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994).

The Orphans' Court did not abuse its discretion in selecting Son as Appellant's guardian. While Son lives in California, the record showed that Appellant's other family members not only do not live nearby, but live farther away in another country. N.T., 2/11/21, at 25, 56; N.T., 5/4/21, at 25-26. There was no evidence that there was any local person with any close relationship to Appellant who was willing to act as Appellant's guardian. The Orphans' Court found that Son was an appropriate guardian for Appellant despite the fact that he does not live nearby because Son had demonstrated his ability to perform the duties of guardianship, successfully worked with people in the area where Appellant lives to provide care for him, and traveled to Pennsylvania as needed. Orphans' Court Opinion at 7-8; N.T., 5/4/21, at 50-51. These determinations are supported by the record. N.T., 2/11/21, at 6-7, 9-10, 28-30; N.T., 5/4/21, at 8-17, 32-33, 36.

In addition, the Orphans' Court gave consideration to and acted consistently with Appellant's preferences that Son be his guardian, shown by Appellant's selection of Son as his power of attorney and one of his health care powers of attorney and Appellant's statement at the May 4, 2021 hearing. Orphans' Court Opinion at 7-8; N.T., 2/11/21, at 5, 24-25; N.T., 5/4/21, at 28, 35-36. Appellant's contention that there is a hostile relationship between Son and Appellant is contradicted by the record of the May 4, 2021 hearing. At that hearing, Appellant not only expressed a preference for Son as his guardian, but repeatedly expressed his appreciation for what Son had done

for him and his love for Son and Son testified concerning his desire to help accommodate Appellant's wishes and preferences and how he cares about Appellant and works with Appellant's long-time close friend concerning Appellant's care. N.T., 5/4/21, at 13-15, 19-21, 23, 31-36, 42.

For the foregoing reasons, we conclude that the Orphans' Court did not err in adjudicating Appellant incapacitated, in ordering a plenary guardianship of Appellant's person and estate, or in appointing Son as Appellant's guardian. Accordingly, we affirm the Orphans' Court's May 12, 2021 order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2022