In re: ESTATE OF Sheri ROSENGAR-
TEN, an Incapacitated Person.

Appeal of: Sheri Rosengarten,
Appellant.

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.
Filed March 24, 2005.

Robert F. Ruehl, Doylestown, for appellant.

Maris C. Langford, Doylestown, for appellee.

BEFORE: BOWES and McCAFFERY, JJ., and McEWEN, P.J.E.

OPINION BY BOWES, J.:

¶ 1 Sheri Rosengarten, an incapacitated person, appeals from the December 17, 2003 order that, *inter alia*, allowed her residence to be sold. We hold that: 1) Ms. Rosengarten has standing to pursue this appeal; 2) she has the right to be represented by counsel of her choice; and 3) the orphans' court committed error by proceeding to order the sale of Ms. Rosengarten's real estate without first conducting a hearing on a) her allegation that she was no longer incapacitated and b) her allegation that her guardian was not acting in her best interest and her related request that her father be appointed guardian. We reverse the December 17, 2003 order and remand for an immediate hearing as to Ms. Rosengarten's continued incapacity and whether Susan Smith should be removed as her guardian. We direct that the case be assigned to a different judge.

¶ 2 Ms. Rosengarten's brother, David Cohen, instituted these guardianship proceedings on October 23, 2001, contending that Ms. Rosengarten was totally incapacitated. The orphans' court appointed Maris Langford, Esquire, to act on behalf of

the alleged incapacitated person. Following a hearing on November 28, 2001, wherein it was established that Ms. Rosengarten suffered from bipolar disorder and delusions and that she had ceased taking her medication for those disorders, she was adjudicated incapacitated. David Cohen was appointed guardian. In 1997, pursuant to a consent order and prior to the adjudication of incapacity herein, David had been appointed conservator over Ms. Rosengarten in a New Jersey action.

¶ 3 Prior to her incapacity, Ms. Rosengarten had executed a living trust and placed her assets in that trust. She and David were the initial co-trustees. The trust provided that if Ms. Rosengarten became incapacitated, her father, Stanley Cohen, would serve as co-trustee with David in her stead. Ms. Rosengarten's former husband, Jacob D. Rosengarten, acting in his capacity as guardian of their minor daughter, Jessica, had instituted proceedings against David in New Jersey, alleging that David had mismanaged or misappropriated Ms. Rosengarten's funds pursuant to his New Jersey conservatorship. In accordance with the settlement reached in the New Jersey action, David resigned as guardian in this action, resigned as trustee of the living trust, and relinquished the right to inherit from Ms. Rosengarten's estate. After David resigned, Susan B. Smith, Esquire, was appointed guardian of the estate and person of Ms. Rosengarten. Stanley Cohen ("Mr.Cohen") remained sole trustee of the living trust.

¶ 4 Ms. Rosengarten's assets were valued at approximately $900,000 and included a residence in Newtown, Pennsylvania, with a value of approximately $280,000. Ms. Rosengarten needed assisted living, and since the house required $535 a month in expenditures for maintenance, Ms. Smith concluded that it was in Ms. Rosengarten's best interest to sell the house.

¶ 5 Ms. Smith approached Mr. Cohen about removing Ms. Rosengarten's personal property from the house to prepare it for sale; Mr. Cohen indicated that he did not want to sell the home because he hoped that Ms. Rosengarten would be able to return there to live. Based on this disagreement, Ms. Smith filed a petition for removal of Mr. Cohen as trustee of the living trust.

¶ 6 Before a hearing on this petition was scheduled, Robert Ruehl, Esquire, entered an appearance on behalf of Ms. Rosengarten and filed an answer and new matter to Ms. Smith's petition. Ms. Rosengarten verified this petition, which opposed removal of Mr. Cohen as trustee. Ms. Rosengarten stated her desire that her father remain trustee of her living trust and also requested that he become guardian of her estate, as outlined in a letter attached to the petition. In the answer and new matter, Ms. Rosengarten expressed a desire that her real estate not be sold and that the possibility be explored that it be rented or converted into a group home wherein she and others could reside. She also objected to the fact that Ms. Smith had violated *Widener Estate,* 437 Pa. 294, 263 A.2d 334 (1970),[1] by including an unsealed copy of her living will and trust in the petition for removal of Mr. Cohen as trustee. In addition, the answer and new matter alleged that there had been a significant improvement in Ms. Rosengarten's mental condition; she requested a review hearing on the question of continued incapacity. Finally, the answer and new matter alleged, "The guardian has failed to

---

1. That case provides that if a copy of a testamentary writing of an incapacitated person is placed in court records, the writing must be kept confidential.

perform duties in accordance with the law or act in the best interest of Respondent Sheri Rosengarten." Answer of Respondent Sheri Rosengarten to Petition Seeking Removal of Her Father Stanley Cohen as Her Trustee, at ¶ 26.

¶ 7 Attached to Ms. Rosengarten's answer and new matter was a copy of a letter handwritten by Ms. Rosengarten. The letter was cogent and practical. In it, Ms. Rosengarten expressed a preference that her house be rented instead of sold and that her personal belongings not be sold at auction, due to concerns that valuable assets would be sold at far less than their fair market value. She also asked that Mr. Cohen be appointed as her guardian to reduce costs.

¶ 8 The record also includes a copy of a letter written by Mr. Cohen and his wife, Ms. Rosengarten's mother, to the court. In that letter, they vehemently argued that Ms. Smith was not acting in their daughter's best interest. For example, they complained that Ms. Smith ignored a request that Mr. Cohen, a certified public accountant, complete Ms. Rosengarten's income tax returns so as to reduce fees. They also informed the court that they believed Ms. Smith was performing tasks that could be performed by a non-lawyer and that she was charging a lawyer's rate of $195 per hour. They included various examples and specifically alleged that Ms. Smith was depleting Ms. Rosengarten's estate and charging excessive and unnecessary fees. As examples of Ms. Smith's unwarranted squandering of Ms. Rosengarten's money, Mr. and Mrs. Cohen listed specified routine and simple tasks for which Ms. Smith sought payment at a $195 hourly rate. The list included assembling furniture, shopping, and delivering items.

¶ 9 The orphans' court did not conduct the requested review hearing regarding Ms. Rosengarten's continued incompetency. It failed to explore whether Mr. Cohen should be appointed guardian. The court did not examine the related allegations that Ms. Smith's fees were exorbitant and unnecessary and that Ms. Smith was not acting in the best interests of Ms. Rosengarten.

¶ 10 Instead, the court proceeded to hold a hearing on Ms. Smith's removal petition on November 25, 2003. At the hearing, Ms. Smith maintained that Mr. Ruehl did not have the right to represent Ms. Rosengarten and that Ms. Rosengarten had no standing to object to removal of her father as trustee. Mr. Ruehl countered that based on the allegation of competency, the review hearing should be held before any decisions were made regarding Ms. Rosengarten's finances. Ms. Smith then requested the hearing be continued so that Ms. Langford could appear.

¶ 11 The hearing was rescheduled to December 10, 2003, where Mr. Ruehl again appeared but was prohibited from participating. Ms. Langford, appointed counsel, failed to inform the court of Ms. Rosengarten's stated preferences: 1) to have her father act as guardian; 2) to have her house rented rather than sold; and 3) to avoid liquidation of her personal property. Ms. Langford never objected to a fee request submitted by Ms. Smith at that hearing. Finally, Ms. Langford did not ask that the court stay proceedings regarding disposition of Ms. Rosengarten's assets until first addressing whether she remained incapacitated, and she never raised any issues pertaining to whether Ms. Smith was acting in the best interest of Ms. Rosengarten. While Ms. Langford voiced an objection to the removal of Mr. Cohen as trustee of the living trust, that point essentially was moot because Mr. Cohen no longer objected to sale of the house. Thus, Ms. Smith withdrew her request for his removal.

¶ 12 Ms. Smith, the only witness at the hearing, testified that it was advisable to sell the house and its contents and represented that it was not feasible for Ms. Rosengarten to return home. Mr. Cohen ultimately assented to the sale of Ms. Rosengarten's home.

¶ 13 Following the December 10, 2003 hearing, the orphans' court: 1) denied the petition to remove Mr. Cohen; 2) ordered Mr. Cohen to execute a real estate listing; 3) ordered Mr. Cohen to accept any *bona fide* offer to purchase the house; 4) ordered Mr. Cohen to deliver the proceeds of the sale to Ms. Smith rather than the living trust; 5) gave Ms. Rosengarten one day to remove her personal belongings from the house; 6) authorized Ms. Smith to hire an auctioneer to sell the remaining contents of the home; and 7) authorized significant fee payments to Ms. Smith. This timely appeal followed.

¶ 14 A petition to dismiss this appeal was filed by Ms. Smith, who contends that Ms. Rosengarten lacks standing. This issue is raised separately from the related question of whether Ms. Rosengarten has the right to representation by Mr. Ruehl. This latter contention concerns Ms. Smith's assertion that since Ms. Rosengarten is incapacitated, she does not have the right to legal representation of her choosing in this matter. Specifically, Ms. Smith maintains, "Incapacitated persons should not have the right to substitute another attorney for court-appointed counsel against the best judgment of the guardian." Appellee's brief at 2.

¶ 15 Initially, we examine our standard of review of the rulings of an orphans' court. The orphans' court's factual findings receive the same deference accorded factual findings of a jury, but we must ensure that the decision of the court is free from legal error. *In re Scheidmantel (In re Sky Trust),* 2005 PA Super 6, 21,

868 A.2d 464. In the present case, the orphans' court committed legal error under the provisions of the Probate, Estates, and Fiduciaries Code ("PEF Code"); thus, we are constrained to reverse.

¶ 16 We now address the merits of the legal issues presented for our consideration. While normally the question of standing would be resolved as a preliminary matter, the unique circumstances of this case necessitate an inverse discussion. Among various assertions of errors raised by Ms. Rosengarten, she contends that the orphans' court should have held a review hearing prior to proceeding on the petition for removal of Mr. Cohen as trustee. We agree with Ms. Rosengarten's position that the orphans' court erred in deciding Ms. Smith's petition for removal and ordering Ms. Rosengarten's house to be sold without first conducting a hearing on her "request for re-hearing on the question of her capacity." Appellant's brief at 27. We also believe that where, as here, allegations are presented that the guardian is not acting in the best interest of the incapacitated person, but rather is charging exorbitant and excessive fees at an attorney's hourly rate for routine services that do not require an attorney's expertise, a hearing on removal should have been held before any further action was taken, especially the approval of additional guardianship fees.

¶ 17 We begin our discussion of this troubling case with a review of the stated purpose of Chapter 55 of the PEF Code, relating to Incapacitated Persons, 20 Pa. C.S. §§ 5501–5555, as outlined in section 5502 (emphases added):

Recognizing that every individual has unique needs and differing abilities, it is the purpose of this chapter to promote the general welfare of all citizens **by establishing a system which permits incapacitated persons to participate as**

**fully as possible in all decisions which affect them,** which assists these persons in meeting the essential requirements for their physical health and safety, **protecting their rights,** managing their financial resources and developing or regaining their abilities to the maximum extent possible and **which accomplishes these objectives through the use of the least restrictive alternative;** and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

¶ 18 Commensurate with that purpose, 20 Pa.C.S. § 5521.2(a) (emphasis added), clearly states:

> (a) TIME OF HEARING.—The court may set a date for a review hearing in its order establishing the guardianship or hold a review hearing at any time it shall direct. **The court shall conduct a review hearing promptly if the incapacitated person, guardian or any interested party petitions the court for a hearing for reason of a significant change in the person's capacity,** a change in the need for guardianship services or the guardian's failure to perform his duties in accordance with the law or to act in the best interest of the incapacitated person. The court may dismiss a petition for review hearing if it determines that the petition is frivolous.

■ ¶ 19 This section unquestionably was violated herein. Without making the requisite determination of frivolity, the orphans' court in this matter proceeded to order the sale of Ms. Rosengarten's house and belongings against her express and articulately-formulated wishes. Rather than conduct the mandated prompt hearing on the allegation that Ms. Rosengarten's condition had improved and that she was no longer incapacitated, the orphans' court chose to proceed in direct disregard of the incapacitated person's stated preferences in this matter and continued to delay the competency review hearing.

¶ 20 The court's actions also constituted a violation of section 5521(a) of the PEF Code, which provides, "Expressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent." We are dismayed at the direction taken by the orphans' court in this matter in light of the allegations that Ms. Rosengarten was no longer incapacitated, that Ms. Smith was not acting in her best interest, and that Ms. Rosengarten desired her father to act as guardian.

¶ 21 The dangers of the incompetency statute have been recognized since its inception. *In re Bryden's Estate,* 211 Pa. 633, 633, 61 A. 250, 250 (1905) (statute allowing for declaration of incompetency "is a dangerous statute" and is "to be administered by the courts with the utmost caution and conservatism."). It is basic to our jurisprudence that a person's property is theirs to dispose of as they wish, even if it results in poverty. *Id.* As the Court stated in *Bryden,* "[T]he basic principle involved, as laid down in *Lines v. Lines,* 142 Pa. 149, 21 A. 809, [is] that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family if he chooses to commit such an act of folly." *Id.* Recently, in *In re Hyman,* 811 A.2d 605, 608 (Pa.Super.2002) (quoting *Estate of Haertsch,* 415 Pa.Super. 598, 609 A.2d 1384, 1386 (1992)), we noted that the incompetency statute "places a great power in the court. The court has the power to place total control of a person's affairs in the hands of another. This great power creates the opportunity for great abuse." The above cited and other provisions of Chapter 55 are tailored to ensure that the incapacitated person's wishes are honored

to the maximum extent possible. In this case, the guardian and the orphans' court violated this mandate at nearly every conceivable opportunity.

¶ 22 Chapter 55 must be interpreted and the courts' actions guided by a scrupulous adherence to the principles of protecting the incapacitated person by the least restrictive means possible. This concept is embodied in our Supreme Court's decision in *In re Peery*, 556 Pa. 125, 727 A.2d 539 (1999). In that case, the alleged incapacitated person was mentally impaired, but the orphans' court concluded that a guardianship was not warranted because the person had a support system in place that met her financial and physical needs and which she preferred over a guardianship. The Supreme Court lauded the orphans' court's implementation of the incapacitated person's desire to continue with the existing support system and quoted with approval the orphans' court's statement that it would abide by the incapacitated person's wishes as long as they were rational and did not result in harm to her.

¶ 23 We have echoed this sentiment, making clear that the intentions of the incapacitated person are to be honored to the fullest extent possible. This concept is best illustrated in *Estate of Haertsch*, 437 Pa.Super. 187, 649 A.2d 719, 721 (1994): "It is clear that throughout the carefully drawn legislation [Chapter 55 of the PEF Code] it was intended that the incapacitated person be permitted the fullest degree of freedom and control over his/her physical and financial affairs."

¶ 24 In this case, Ms. Rosengarten expressed reasonable desires that continually were ignored by her guardian and the court. She asked that her father be appointed guardian, that her house be rented rather than sold, that her personal belongings not be auctioned, that Mr. Ruehl represent her, and that a review hearing be held.

¶ 25 We first hold that if an allegation of competency is made, the orphans' court must immediately proceed to either make a determination of frivolity based on sound evidence or logic or hold a review hearing. In the instant case, the initial determination of incapacity was based upon the fact that Ms. Rosengarten suffered from bipolar disorder but was not taking her medication. By necessary implication, if she had started to take her medication properly, it would follow that a review hearing would be in order, certainly before her assets were disposed of against her wishes. We also observe that while the initial burden of proving incapacity is a clear and convincing standard, *In re Hyman, supra*, the incapacitated person has the burden of establishing that he has regained capacity only by a fair preponderance of the evidence. *In re Estate of Porter*, 463 Pa. 411, 345 A.2d 171 (1975). These burden-of-proof principles, coupled with the recited facts, precluded a facial determination of frivolity when Ms. Rosengarten alleged a change in her capacity before the orphans' court.

¶ 26 We also conclude that under the facts presented herein, the orphans' court erred in proceeding to order disposition of Ms. Rosengarten's assets without first conducting a hearing on her allegation that her guardian was not acting in her best interest and her related request that her father be appointed guardian. We stress herein that in her answer and new matter, Ms. Rosengarten leveled a specific allegation that Ms. Smith was not acting in her best interest. The record contains factual averments supporting the position that Ms. Smith was not acting in Ms. Rosengarten's best interest and was depleting assets by charging excessive fees to perform rudimentary tasks that should

have been delegated to others who would have charged substantially lower rates. In addition, there was an allegation that Ms. Smith hired an accountant to prepare Ms. Rosengarten's tax returns when Mr. Cohen had offered to perform the same service at no fee and was qualified to do so. Ms. Rosengarten specifically asked that her father replace Ms. Smith and act as guardian since he could significantly reduce the depletion of her assets by performing many tasks for free; Mr. Cohen also had been appointed Ms. Rosengarten's trustee in her living trust. *See* 20 Pa.C.S. § 5511(f) (a family relationship shall not automatically disqualify a person from acting as guardian and the court shall give preference to a nominee of the incapacitated person).

¶ 27 A review of the letters sent by the Cohens to the court establishes that they raised potentially meritorious averments of the possible existence of breach of Ms. Smith's duties as guardian of the estate. As guardian of the estate, Ms. Smith was a fiduciary whose standard of care was that which a person of ordinary prudence would practice in the care of his own estate. *See In re Estate of Scharlach*, 809 A.2d 376 (Pa.Super.2002). A person of ordinary prudence would not pay someone $195 an hour to deliver items, assemble furniture, and shop. A person of ordinary prudence would not pay someone for services when a qualified relative offers to perform the function free of charge. Once faced with the accusations contained in the Cohens' letter and with Ms. Rosengarten's related contention that Ms. Smith was not acting in her best interests, the orphans' court should have explored these matters before allowing Ms. Smith to continue in her capacity as guardian of the estate and person.

■■■ ¶ 28 We also agree with Ms. Rosengarten that, at the hearing conducted on her petition to remove Mr. Cohen as trustee, Ms. Smith violated her duties to act in Ms. Rosengarten's best interest and to honor her wishes to the fullest extent possible. She failed to inform the court of Ms. Rosengarten's preferences regarding her counsel of choice and the disposition of her assets. Indeed, it is evident that Ms. Smith did not even conduct a cursory examination of the possibility of renting the house. Even when a guardian is in disagreement with the incapacitated person, 20 Pa.C.S. § 5521(e) requires that the divergence be revealed:

> **Knowledge Of Objection.**—In a hearing to determine whether a guardian shall be ordered to consent to a specific act or omission, if the guardian knows or has reason to know of the incapacitated person's objection to the action or omission, whether such objection had been expressed prior or subsequent to the determination of incapacity, the guardian shall report to the court such knowledge or information.

■■■ ¶ 29 Ms. Smith continues to flout her duties on appeal. She maintains, as does the orphans' court, that Ms. Rosengarten is not permitted to express her wishes in this case. They both contend that Ms. Rosengarten lacks standing to pursue this appeal. A party has standing if he has been aggrieved by a ruling, or in other words, if he demonstrates that he has a substantial, direct and immediate interest in the outcome of the litigation. *In re Hickson*, 573 Pa. 127, 821 A.2d 1238 (2003); *Merrill Lynch Mortgage Capital v. Steele*, 859 A.2d 788 (Pa.Super.2004). To suggest that an incapacitated person cannot object to the orphans' court's refusal to conduct a hearing regarding continued incapacity before proceeding to dispose of that person's personal assets defies logic, as does the proposition that an incapacitated person has no interest in seeing her

assets disposed of without her input when that person has specifically alleged that she is no longer incapacitated.

¶ 30 Essentially, Ms. Smith and the orphans' court aver that since Ms. Rosengarten is an incapacitated person, she does not have an interest in this litigation and should be denied the opportunity to express her voice in the courts. Their position disregards the language of the applicable statute that is designed specifically to ensure that the incapacitated person's desires are honored to the fullest extent possible unless those desires will harm her.

■ ¶ 31 Again evidencing a settled purpose of ignoring any expression of Ms. Rosengarten's personal preferences, the orphans' court and Ms. Smith also insist that Ms. Rosengarten has no right to counsel of her choosing. They maintain that Mr. Ruehl is not permitted to participate in these proceedings as her counsel. The sole legal support for this position is 20 Pa.C.S. § 5524, effect of determination of incapacity, which provides in relevant part that, "A totally incapacitated person shall be incapable of making any contract or gift or any instrument in writing."

¶ 32 We make several observations. First, we are not presently considering the validity of any contract entered by Ms. Rosengarten and Mr. Ruehl, and in fact, there is no evidence that one was made. Second, a contract entered into by an incapacitated person is merely presumed to be voidable, and this presumption is subject to rebuttal by proof that the person was not incapacitated, see *Fulkroad v. Ofak,* 317 Pa.Super. 200, 463 A.2d 1155 (1983), which was an allegation raised in this matter. Finally, this position begs the central question, which is whether Ms. Rosengarten should have the right to appointed counsel of her choosing. As the above-cited case law and statutory language make abundantly clear, Ms. Rosengarten's stated wishes are to be honored to the extent possible. In the absence of some indication that Mr. Ruehl's representation would be harmful to Ms. Rosengarten, once Ms. Rosengarten indicated that she wanted him to represent her, Mr. Ruehl should have been permitted to represent her voice.

¶ 33 The appointment of Mr. Ruehl would have been particularly appropriate herein as appointed counsel, Ms. Langford, admitted at oral argument that she made no inquiry into and took no action on the allegation that Ms. Rosengarten no longer was incapacitated. In addition, at the hearing regarding the sale of the house, Ms. Langford did not raise a single objection to Ms. Smith's fees and failed to articulate Ms. Rosengarten's desires in this matter, including her wish that her father act as guardian to reduce costs.

¶ 34 Thus, the orphans' court has asserted that Ms. Rosengarten cannot be represented by her counsel of choice, has indicated that she has no right to challenge the disposition of assets that she owns, has delayed a hearing on her capacity when that hearing is statutorily-mandated to be held promptly, and failed even to examine facially meritorious allegations that the guardian was violating her duty to act in Ms. Rosengarten's best interest by charging excessive and unwarranted fees. The handling of this matter flies in the face of the fundamental precepts and goals of the PEF Code relating to incapacitated persons.

¶ 35 Petition to quash is denied. The order is reversed. The matter is remanded for a prompt hearing on Ms. Rosengarten's continued incapacity, on her request that Ms. Smith be removed as guardian and Mr. Cohen appointed in her stead, and as to whether Ms. Smith's fees were prop-

er. The matter is to be assigned to a different judge. The court is directed to appoint Robert F. Ruehl, Esquire, as Ms. Rosengarten's counsel. Jurisdiction is relinquished.