J-A20045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF: H.T., AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1675 MDA 2022 |

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Lackawanna County Orphans' Court at
No(s): 2021-00184

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM PER CURIAM:                **FILED OCTOBER 18, 2023**


Appellant is Henry S. Thompson, an incapacitated person. Appellee is Andrew B. Thompson, son and legal guardian of Appellant. This appeal is from the decree entered on November 10, 2022 in the Court of Common Pleas of Lackawanna County Orphans' Court, which dismissed as frivolous Appellant's Petition for Review and Change in Guardian and denied Appellant's Request for Declaratory Judgment and Fee Approval. We affirm.

The facts and procedural history, as set forth by the trial court, are reproduced below:

> [Henry Thompson] is a 72-year-old man who lives alone in an apartment in Scranton, Pennsylvania. [Mr. Thompson] suffers from alcoholism and short-term memory impairment and a

---

[*] Former Justice specially assigned to the Superior Court.

number of other serious medical conditions, including congestive heart failure and a past history of stroke and heart attacks. Report of Dr. Richard Fischbein (Fischbein Report) at 13-14, 18, 21; N.T., 2/11/21, at 8, 20. [Mr. Thompson] has two adult children, Son, who lives in California, and a daughter who lives in the Netherlands (Daughter). N.T., 2/11/21, at 5, 56; N.T., 5/4/21, at 19, 25. [Mr. Thompson] and his wife have been separated for 12 years and his wife lives in the Netherlands. N.T., 5/4/21, at 19, 26. In July 2020, [Mr. Thompson] gave Son a power of attorney and gave Son, Daughter, and an attorney a jointly held health care power of attorney. N.T., 2/11/21, at 5, 24-25.

In or about early February 2021, Son filed an emergency petition seeking an adjudication that [Mr. Thompson] is an incapacitated person under 20 Pa.C.S. § 5511 and seeking appointment of himself as plenary guardian of the person and estate of [Mr. Thompson]. The Orphans' Court, on February 8, 2021, appointed Son temporary plenary guardian of [Mr. Thompson's] person and estate and appointed counsel to represent [Mr. Thompson]. Orphans' Court Order, 2/8/21. On February 11, 2021, the Orphans' Court held a hearing on the guardianship petition at which Son, Daughter, and an expert witness, Vincent Carolan, testified. [Mr. Thompson] was not at the hearing, but was represented by his appointed counsel, who had not yet been able to talk to him. N.T., 2/11/21, at 3-4.

Son testified that when he obtained the power of attorney, [Mr. Thompson] was living in unsanitary conditions, in his own urine and feces, and that he had [Mr. Thompson's] apartment fumigated and cleaned and hired a person to be with [Mr. Thompson] 10 hours a day to help [Mr. Thompson] with getting dressed, personal hygiene, taking his medications, and other activities, and to cook meals for [Mr. Thompson]. N.T., 2/11/21, at 6-11, 28-30. Son testified that [Mr. Thompson] is on 12 different medications and does not take them properly except under the caregiver's supervision and that [Mr. Thompson] had been hospitalized more than six times in the last year. *Id.* at 10-11, 22, 31. Son testified that although he was able to work with [Mr. Thompson's] doctors through the power of attorney, [Mr. Thompson] does not understand his medical conditions and sometimes communicates with his doctors without letting Son know. *Id.* at 27, 30. Son also testified that [Mr. Thompson] drives a car despite not having a valid driver's license. *Id.* at 10.

In addition, Son testified that after he became [Mr. Thompson's] power of attorney, he learned that [Mr. Thompson] was not opening his mail and paying his bills and that [Mr. Thompson] had unpaid federal taxes of over $400,000, which Son paid. N.T., 2/11/21, at 6, 29. Son testified that [Mr. Thompson] was making very frequent wire transfers in amounts of $500 to $3,000 or more to people who solicited him online and that [Mr. Thompson] did not understand the frequency or the total amount of these transfers, which exceeded $500,000. *Id.* at 11-19; Exs. 2, 3, 4. Son testified that he understood and was willing to accept the responsibilities of guardianship *Id.* at 32. Daughter testified that she communicates frequently with [Mr. Thompson] by phone and text message and that she did not object to Son being appointed as guardian for [Mr. Thompson]. *Id.* at 56-57.

Carolan, who was a licensed clinical social worker and alcohol and drug counselor and was not a physician or licensed psychologist, testified as an expert in alcohol addiction and medication mismanagement. N.T., 2/11/21, at 34, 38-39, 55; Ex. 1 at 1. Carolan did not meet or speak with or perform any tests on [Mr. Thompson] and based his opinions on his review of [Mr. Thompson's] medical records and interviews with Son, a longtime friend of [Mr. Thompson], and [Mr. Thompson's] caregiver. *Id.* at 38, 40-41, 50-52. Carolan testified that, in his opinion, medications that [Mr. Thompson] was taking had a significant risk of catastrophic results, especially if taken in combination with alcohol, and in combination with alcohol, would cause [Mr. Thompson] to be unable to recall things he has done and decisions he has made. *Id.* at 42-46, 49. Carolan opined that [Mr. Thompson] was not capable of independent living and lacks the capacity to take care of himself and to make important decisions. *Id.* at 44-48.

Following this hearing, the Orphans' Court entered an order making a final adjudication that [Mr. Thompson] is an incapacitated person and appointing Son as plenary guardian of [Mr. Thompson's] person and estate. Orphans' Court Order, 2/12/21. On or about March 1, 2021, [Mr. Thompson] through new counsel, petitioned for orders authorizing the retaining of new counsel for [Mr. Thompson] and the retaining of a psychiatrist, Dr. Richard Fischbein, to conduct an evaluation of [Mr. Thompson]. Following a hearing on March 5, 2021, the Orphans' Court rescinded the February 12, 2021 guardianship order and entered orders reappointing Son as temporary emergency guardian of [Mr. Thompson's] person and estate and granting [Mr. Thompson's]

petition for new counsel and for retention of Dr. Fischbein to perform an evaluation of him. N.T., 3/5/21, at 17-19; Orphans' Court Rescinding Order, 3/5/21; Orphans' Court Temporary Guardianship Order, 3/5/21; Orphans' Court Order, 3/9/21.

On May 4, 2021, the Orphans' Court held a final hearing on Son's guardianship petition. At this hearing, which [Mr. Thompson] attended, the parties stipulated to the admission of Dr. Fischbein's report of his evaluation of [Mr. Thompson], Son gave additional testimony, and [Mr. Thompson's] counsel read a statement prepared by [Mr. Thompson].

Dr. Fischbein reported that he based his evaluation and opinions on his in-person interview of [Mr. Thompson], interviews of Son, the caregiver, and two longtime friends of [Mr. Thompson], and review of the testimony from the February 2021 hearing, [Mr. Thompson's] medical records, and other documents. Fischbein Report at 1-20. Dr. Fischbein concluded that [Mr. Thompson] suffers from permanent short-term memory impairment caused by his alcoholism and that his insight and judgment are so limited that he needs 24-hour, 7-days-a-week supervision and care. *Id.* at 21-24. Dr. Fischbein opined that [Mr. Thompson] needed a permanent plenary guardian of both his person and his estate and that his need for guardianship was unlikely to change. *Id.* at 21, 23.

Son testified that since his appointment as temporary guardian, he had arranged for round-the-clock in-home care for [Mr. Thompson] and that [Mr. Thompson] needed such care and had benefited from it. N.T., 5/4/21, at 8-11. testified that he travels to Pennsylvania for [Mr. Thompson's] medical appointments and is able and willing to travel to Pennsylvania on short notice *Id.* at 11-12. Son also testified that permanent rather than temporary guardianship was need [sic] for the guardianship to be fully recognized in the Netherlands, where some of [Mr. Thompson's] assets are. *Id.* at 15-19.

In the statement read to the court by his counsel, [Mr. Thompson] expressed appreciation for the efforts that Son had made to obtain assistance for him in his home and for the caregivers that Son had hired. N.T., 5/4/21, at 32, 36, 38. While [Mr. Thompson] requested that the court order only a 90-day extension of the temporary guardianship or a limited guardianship, he stated that he preferred for Son to be his guardian. *Id.* at 35-38. Following his counsel's reading of the

statement, [Mr. Thompson] confirmed that the statement accurately reflected his wishes and feelings. *Id.* at 42.

On May 12, 2021, following this hearing, the Orphans' Court entered an order adjudicating [Mr. Thompson] incapacitated and in need of a plenary guardian of his person and estate and appointing Son as the plenary guardian of [Mr. Thompson's] person and estate. Orphans' Court Order, 5/12/21. On June 9, 2021, [Mr. Thompson] timely appealed.

*In re Guardianship of H.T.*, case no. 747 MDA 2021, Memorandum Decision at 1-6 (Pa. Super. August 25, 2022).

While this appeal was pending, on October 20, 2021, Henry Thompson filed a Petition for a Review Hearing and Termination of Guardianship. On November 12, 2021, the guardian filed an Answer and Motion to Dismiss the Petition for Review Hearing and Termination of Guardianship. On November 16, 2021, [the trial court] entered an order, granting the guardian's Motion to Dismiss the Petition for Review Hearing and Termination of Guardianship since the case was pending in the Superior Court following an appeal by Henry Thompson, and [the] court lacked jurisdiction pursuant to Pa.R.A.P. 1701.

On November 17, 2021, Richard Bishop, Mr. Thompson's attorney for the guardianship proceedings, filed a Petition for Approval to File Divorce Proceedings in the Netherlands on behalf of Henry Thompson. On November 17, 2021, [the trial court] entered an order, denying the petition since the court lacked jurisdiction pursuant to Pa.R.A.P. 1701.

On November 23, 2021, Henry Thompson filed a Motion for Reconsideration of the court's November 16, 2021 order, granting the guardian's Motion to Dismiss the Petition for Review Hearing and Termination of Guardianship, and asserted that the trial court had jurisdiction to proceed to hear the Petition for Review Hearing, as well as the Petition for Approval to File Divorce Proceedings and the Petition to Compel Payment of Legal Fees since failure to proceed would run contrary to the PEF Code and the purpose of its provisions. On November 23, 2021, [the trial court] entered an order, denying Mr. Thompson's motion for reconsideration since the court lacked jurisdiction pursuant to Pa.R.A.P. 1701, and contrary to his assertions, the issues raised in the appeal are the same issues raised in the Petition for a Review Hearing and Termination of Guardianship.

On December 17, 2021, Henry Thompson filed another Notice of Appeal, this time of [the trial court]'s November 16, 2021 order, granting the guardian's Motion to Dismiss the Petition for Review Hearing and Termination of Guardianship. On March 18, 2022, the Superior Court quashed this appeal.

On March 2, 2022, Henry Thompson filed a Petition to Engage Psychologist, and on March 4, 2022, the guardian filed an Answer. On March 24, 2022, [the trial court] entered an order, denying Mr. Thompson's Petition to Engage Psychologist since the court lacked jurisdiction pursuant to Pa.R.A.P. 1701, and because expenditure of funds to hire another expert after the court appointed Dr. Fischbein at Mr. Thompson's specific request would be an unwarranted waste of the assets of the Estate.

On April 5, 2022, Henry Thompson filed a Petition to File Account, and on April 13, 2022, the guardian filed an Answer. On May 16, 2022, a hearing was held and the court entered an order denying the Petition to File Account since the court lacked jurisdiction pursuant to Pa.R.A.P. 1701, but noting that a complete and thorough Report of the Guardian had been filed as required by law on May 10, 2022.

On August 25, 2022, the Superior Court affirmed [the trial] court's May 12, 2021 order, adjudicating Mr. Thompson incapacitated and ordering a plenary guardianship of his person and estate, and appointing Andrew Thompson as his guardian. The Superior Court found that, contrary to Mr. Thompson's contentions, the record supported [the trial court]'s determination that a plenary guardian, rather than a limited guardianship, was necessary, and that his son's providing of caregivers did not eliminate the need for plenary guardianship since Dr. Fischbein's opinions were based on his evaluation of Mr. Thompson's condition after he was already receiving care, and the round-the-clock care and supervision were the result of his son's plenary guardianship. The court also found that contrary to Mr. Thompson's assertions that his son should not be his guardian because he lives too far away and their relationship is hostile, [the trial court] did not abuse its discretion in selecting his son as guardian.

On September 26, 2022, Mr. Thompson filed a Petition for Review, Change in Guardians, Request for a Declaratory Judgment, and Request to Authorize Payment of Fees Incurred for Services Provided Pursuant to Attorney Bishop's Outreach to Attorneys to Aid Henry. On October 12, 2022, Andrew Thompson

filed a Motion to Dismiss the Petition for Review and Termination of Guardianship as Frivolous. On October 18, 2022, Henry Thompson filed an Answer to the Motion to Dismiss. On October 26, 2022, Andrew Thompson filed an Answer to the Petition for Review, Change in Guardians, Declaratory Judgment and Fee Payment Approval. On November 10, 2022, [the trial court] entered a Memorandum and Order dismissing Henry Thompson's Petition for Review and Change in Guardians, and denying the Request for a Declaratory Judgment and Request to Authorize Payment of Fees Incurred for Services Provided Pursuant to Attorney Bishop's Outreach to Attorneys to Aid Henry. The order also clarified that Mr. Bishop's representation of Mr. Thompson had been approved for the guardianship proceedings only.

On November 30, 2022, counsel for Henry Thompson emailed [the trial court] a proposed Decree and Petition to Withdraw or Suspend the November 10, 2022 Memorandum and Order. This petition was not filed, and before the court could schedule a hearing on it, on December 7, 2022, Henry Thompson filed a Notice of Appeal. Mr. Thompson filed the Petition to Withdraw or Suspend on January 3, 2023.

On December 12, 2022, [the trial court] ordered Mr. Thompson to file a Concise Statement of the Matters Complained of on Appeal within 21 days pursuant to Pa.R.A.P. 1925(b). On December 29, 2022 Mr. Thompson filed a Concise Statement of Matters Complained of on Appeal.

Tr. Ct. 1925(a) Op. at 1-7.

Appellant raises one issue for review: "Whether the trial court erred in dismissing the Petition for Review and Change in Guardian as frivolous and denying the Request for Declaratory Judgment and Fee Approval filed by Henry Thompson without a hearing?" Appellant's Br. at 4. We view this issue as two-fold and will first address whether the trial court erred in dismissing the Petition for Review and Change in Guardian as frivolous; then we address

whether the trial court erred in denying the Request for Declaratory Judgment and Fee Approval.

## A. Dismissing Petition as Frivolous

Appellant argues that he no longer exhibits the behavior pattern that led to the finding of incapacity resulting in the guardianship, and thus he seeks to modify the scope of a guardian if one is still necessary, change guardians, consult his own lawyers, and pursue his own financial strategies. Appellant's Br. at 17-19, 22. Specifically, Appellant asserts that his condition has improved over the past two years since the guardianship was imposed, Appellant's Br. at 16; that Son has failed to honor Appellant's wishes and has had little contact with Appellant, *Id.*; Son has refused Appellant's request for financial information and for a new evaluation, *Id.* at 16, 18; Responsible Party Services, Inc. ("RPS") has consented to be Appellant's new guardian, *Id.* at 18; Appellant has an interest in pursuing financial strategies and is in a position to make investment recommendations, *Id.*; that only a limited guardianship is necessary, *Id.* at 19; Appellant had been denied from engaging a psychologist for another evaluation, *Id.* at 23; and that Appellant has been deprived of his free will as his requests have been ignored. *Id.* at 24.

Appellee, Son, argues that Appellant's Petition contains no allegation that his health care requirements are not being met, Appellee's Br. at 11; that any request of Appellant's the court "ignored" was because the court did not

have jurisdiction, *Id.* at 12; that Son manages Appellant's financial affairs, health issues, and home life at no charge, *Id.* at 18; and that any of Appellant's intents or wishes that have not been honored by Son are strategies employed to protect Appellant's finances. *Id.* at 19.

Our standard of appellate review of an orphans' court decree employs a deferential standard. *In re Estate of Strahsmeier*, 54 A.3d 359, 362 (Pa.Super. 2012). However, we must ensure that the court's decision is free from legal error. *In re Estate of Rosengarten*, 871 A.2d 1249, 1253 (Pa.Super. 2005). Our Supreme Court has reiterated the principle that reviewing courts are "bound by the trial judge's finding of facts unless the findings are not based on competent evidence. Conclusions of law, however, are not binding on an appellate court whose duty it is to determine whether there was a proper application of law to fact by the lower court." *In re Peery*, 727 A.2d 539, 540 (Pa. 1999) (citation omitted).

Therefore, "the orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Leipold*, 208 A.3d 507, 510 (Pa.Super. 2019) (citations omitted and some formatting altered). "An abuse of discretion exists when the trial court has rendered judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *In re Duran*, 769 A.2d 497, 506 (Pa.Super. 2001) (citation omitted).

Pursuant to 20 Pa.C.S. § 5512.2(a):

The court may set a date for a review hearing in its order establishing the guardianship or hold a review hearing at any time it shall direct. The court shall conduct a review hearing promptly if the incapacitated person, guardian or any interested party petitions the court for a hearing for reason of a significant change in the person's capacity, a change in the need for guardianship services or the guardian's failure to perform his duties in accordance with the law or to act in the best interest of the incapacitated person. The court may dismiss a petition for review hearing if it determines that the petition is frivolous.

20 Pa.C.S. § 5512.2. That section was clarified by ***In re Estate of Rosengarten***, a case on which Appellant heavily relies: "We first hold that if an allegation of competency is made, the orphans' court must immediately proceed to ***either make a determination of frivolity based on sound evidence or logic*** or hold a review hearing." ***Rosengarten***, 871 A.2d at 1255 (emphasis added).

In the ***Rosengarten*** case, this Court held that the orphans' court violated 20 Pa.C.S. § 5512.2(a)because it failed to conduct the requested review hearing, explore if a new guardian should be appointed, and examine if the guardian was acting in the best interest of the incapacitated "***without making the requisite determination of frivolity***." ***Rosengarten***, 871 A.2d at 1254 (emphasis added). In the instant case, the trial court did not hold a review hearing but did make a determination of frivolity in the order in question, and thus did not violate 20 Pa.C.S. § 5512.2(a) unless that

determination was made with no "[basis in] sound evidence or logic" pursuant to **Rosengarten**.

To decide if the determination of frivolity was an error of law or abuse of discretion, we closely examined the allegations in the petition and support in the record. The record contains sufficient evidence that Appellant's severe health concerns warrant plenary guardianship, as found by the trial court and affirmed by this Court. **In re Guardianship of H.T.**, case no. 747 MDA 2021, Memorandum Decision at 12 (Pa. Super. August 25, 2022).

Appellant's allegations of a significant change in Appellant's capacity presented in his Petition for Review are insufficient as the record contains no evidence that those concerns have changed at all, and moreover, significantly. Dr. Fischbein concluded that Appellant suffers from permanent short-term memory impairment caused by his alcoholism and that his insight and judgment are so limited that he needs constant supervision and care. Fischbein Report at 21-24. Appellant baldly asserts, "Since the time that Henry was declared to be totally incapacitated, Henry no longer exhibits the behavior pattern which (Henry assumes) led to Andrew's filing of a Petition for Guardianship which resulted in the Guardianship Decree." Petition for Review ¶ 12.

The record reflects Dr. Fischbein's findings that Appellant's need for guardianship was unlikely to change, and neither the record nor the Petition

for Review contain a scintilla of evidence that Appellant's medical status has changed. As the court below pointed out, Appellant

> did not request or provide any confirmation from his doctors that his health or need for care has changed, nor did he assert that the guardian failed to provide him with medical information, nor did he request that the court order the guardian to provide him with medical information. In fact, a review of Mr. Bishop's bills reveals that no medical information was even requested until after the guardian filed the motion to dismiss his petition for failure to include any medical basis or confirmation of a change in circumstances since Dr. Fischbein's evaluation and determination.

Tr. Ct. 1925(a) Op. at 10. Thus, we find that the trial court did not err or abuse its discretion in making the determination of frivolity, and that it based its decision on sound logic and evidence supported by the record.[1]

This case is distinguishable from **_Rosengarten._** In that case, the appellant had bipolar disorder and she was adjudicated incapacitated after she stopped taking her medicine. This Court opined,

> In the instant case, the initial determination of incapacity was based upon the fact that Ms. Rosengarten suffered from bipolar disorder but was not taking her medication. By necessary implication, if she had started to take her medication properly, it

_____

[1] Appellant points out factual disagreements between Appellant's Petition for Review and Appellee's Answer to Petition for Review, Appellant's Br. at 17-19, and states, "despite these numerous factual disputes, the Court did not hold a hearing and summarily dismissed the Petition as frivolous. It is axiomatic that these factual disputes are properly decided in a hearing . . . ." Appellant's Br. at 19. We note that the standard for determining the Petition was frivolous is "based on sound evidence or logic" and not the absence of issues of fact. In making the determination that the Petition was frivolous, the court did not need to, and indeed did not, make any factual determinations that affect the status of any of Appellant's rights.

would follow that a review hearing would be in order, certainly before her assets were disposed of against her wishes.

*Rosengarten*, 871 A.2d at 1255. Here, however, Appellant's evaluation revealed that his memory impairment is "permanent" and his need for guardianship was "unlikely to change," so on these facts this Court cannot determine by implication that an allegation of change in capacity would preclude a facial determination of frivolity.

Appellant states that the various rulings from the Court have

placed Mr. Thompson in a position from which it is impossible to escape from the yoke of guardianship. The Petition for Review was dismissed in part on the basis that Mr. Thompson has failed to produce medical evidence of a change in circumstances. However, when petitioned by Mr. Thompson to obtain permission to engage a highly qualified and credentialed psychologist . . . to do just that, the court denied same due to purported lack of jurisdiction and the court's determination that the expenditure of sums to higher yet another expert . . . would be unwarranted waste of the assets of the estate.

Appellant's Br. at 23 (internal citations omitted).

Appellant concludes the court demands medical evidence of a change in circumstances while simultaneously preventing Appellant from being seen by anyone who could provide medical evidence. We disagree. This Appellant had already specifically petitioned the court to retain psychiatrist Dr. Richard Fischbein as Appellant's expert. The court granted the petition and ordered Dr. Fischbein, Appellant's doctor of choice, to conduct the evaluation of Appellant, Orphans' Court Order, 3/9/21, and the court relied on Dr. Fischbein's testimony in making its determination of incapacity. Why Appellant

would rather another doctor now instead of his first choice is irrelevant; the court below determined that, in addition to lacking jurisdiction, it would be a waste of estate assets for Appellant to retain a new doctor, and we find no abuse of discretion. If Appellant's medical status has improved significantly enough to warrant a new medical analysis that could result in new findings, Appellant can obtain that analysis from the expert he requested as his first choice, and petition the trial court for review of those findings while that court has jurisdiction.

Further, Appellant's Petition for Review alleges that "at this time, [Son] is an inappropriate person to control Henry's financial activities or take control of Henry's personal life." Petition for Review ¶ 16. Appellant cites as evidence of a need of change in guardian that "[Son] has had very little personal contact with Henry, has disregarded Henry's wishes and has prevented Henry from receiving financial information upon which he could make his recommendations." Petition for Review ¶ 22.

Appellant now suggests RPS be appointed to serve as his guardian. Petition for Review ¶ 19. Son argues that this organization would take payment from the corpus of Appellant's estate when Son has provided these services to Appellant free of charge. Appellee's Answer to Petition for Review ¶ 19. "A person of ordinary prudence would not pay someone $ 195 an hour to deliver items, assemble furniture, and shop. A person of ordinary prudence would not pay someone for services when a qualified relative offers to perform

- 14 -

the function free of charge." ***In re Estate of Rosengarten***, 871 A.2d at 1256.

The choice of guardian lies within the sound discretion of the trial court,

***Coulter Estate***, 178 A.2d 742, 747 (Pa. 1962), and we find no abuse of that

discretion. Therefore, we affirm the lower court's dismissal of the Petition for

Review and Change in Guardian.

B. Denying Request for Declaratory Relief and Fee Approval

Appellant's Petition for Review contained a request for Declaratory

Judgment. Appellant engaged a number of attorneys without the knowledge

or approval of his guardian, and had seven "Estate Planning Documents"

prepared including a will and powers of attorney. Petition for Review ¶ 26.

Specifically, Appellant states, "Henry seeks to have the court determine

that, even though Henry was adjudicated totally incapacitated for

guardianship purposes under 20 Pa.C.S. §5501, on August 3, 2022, when

Henry signed the Estate Planning Documents, Henry had testamentary

capacity as 'testamentary capacity' is defined under controlling Pennsylvania

case law." Petition for Review ¶ 29. The trial court denied this request.

> When reviewing a declaratory judgment, our Supreme Court has determined that appellate courts in this jurisdiction are limited to determining whether the trial court committed a clear abuse of discretion or an error of law. An appellate court may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence. In further clarifying the principles that we must apply when reviewing a declaratory judgment, we have explained the following.

When reviewing the determination of the trial court in a declaratory judgment action, our scope of review is narrow. As declaratory judgment actions follow the practice and procedure of an action in equity, we will review the determination of the court below as we would a decree in equity and set aside the factual conclusions of the trial court only where they are not supported by adequate evidence. However, when reviewing an issue of law in a declaratory judgment action, our scope of review is plenary and our standard of review is *de novo*.

*In re Estate of Snyder*, 13 A.3d 509, 512 (Pa.Super. 2011) (internal citations and quotation marks omitted).

[E]vidence of incapacity for a reasonable time before and after the making of a will is admissible as an indication of lack of capacity on the day the will is executed. An adjudication of mental incompetency near the date of execution of a will does not necessarily prove lack of testamentary capacity. Where a person is adjudicated a mental incompetent and thereafter executes a will, the burden is shifted to the proponent of the will to show by clear and convincing evidence that at the time the will was made such person possessed testamentary capacity.

*Estate of Vanoni*, 798 A.2d 203, 207 (Pa.Super. 2002).

As evidence of testamentary capacity, Appellant asserts that (1) Appellant was made aware that the broad definition of "testamentary capacity" includes knowing the natural objects of one's bounty, having a general knowledge of assets one is able to convey, and knowing how and to whom one wishes to make those conveyances, Petition for Review ¶ 50, and (2) that an attorney informed Appellant that the attorney believed Appellant had testamentary capacity. Petition for Review ¶ 51.

The trial court stated in its November 10, 2022 memorandum accompanying the order at issue on this appeal,

> Mr. Thompson has not provided any medical support for this assertion, and the court is not in any position to make this determination. Mr. Thompson has really put the cart before the horse here in asking this court, that has found him to be totally incapacitated, to look back to a date three months ago, and somehow determine that on that date, he had testamentary capacity. The court will not do this, and therefore any estate documents signed by Mr. Thompson on that date are presumed to be invalid since Mr. Thompson was legally totally incapacitated on that date.

Tr. Ct. Memo, 11/10/22 at 13. The court below found that Appellant did not overcome this burden by clear and convincing evidence, and we agree. There is evidence that Appellant was provided the definition of testamentary capacity, but no evidence that he acknowledged that he understood the definition, let alone evidence submitted that Appellant actually possesses a clear understanding of the natural objects of his bounty, his assets, and his intent for conveyances. Thus, we discern no abuse of discretion or error of law.

Appellant further requested that the court authorize payment of fees to the attorneys who prepared the documents who were engaged by Appellant's court-appointed counsel. Petition for Review at 6-8. A discussion of additional facts and procedural history are necessary here:

On May 4, 2021, the hearing was held that resulted in the May 12, 2021 Final Guardianship Decree. At that hearing, the trial court said it expected

compliance with "not only the letter of the order but the spirit of the order that is being entered." N.T., 5/4/21 at 53. Contained in the resulting order is the authority to hire lawyers which is left entirely to Son. Orphans' Court Order, 5/16/21 ¶ 24.

> There has also been litigation concerning the payment of Mr. Bishop's legal fees and costs. On November 12, 2021, Mr. Bishop filed a Petition to Compel Payment of his Legal Fees and Costs, asserting that while the guardian had paid his legal fees through June 30, 2021, he had not been paid since due to questions concerning some of his actions on behalf of Mr. Thompson. On December 9, 2021, the guardian filed an answer to Mr. Bishop's Petition to Compel Payment of his Legal Fees and Costs and a Cross-Motion for removal of Hourigan, Kluger & Quinn as counsel for Henry S. Thompson, asserting that there were fees related to real estate development and other activities interfering with the guardian's duties. On January 19, 2022, this court entered an order, granting the Petition to Compel Payment of his Legal Fees and Costs, but ordering that future legal fees generated by professional services in pursuit of business ventures first be approved by the guardian.

Tr. Ct. Memo, 11/10/22 at 5 n.1. On May 16, 2022, upon the guardian's speculation that third party attorneys were drafting documents for Appellant, the court stated on the record,

> Next, if an attorney is sitting down and preparing legal documents for somebody who is under a court determination of being incapacitated, then let that fool go and waste his money and his time because the attorney has an obligation to be certain that an individual has the capacity to do what they are purporting to do.

N.T., 5/16/22 at 12.

The Appellant continued to "somehow unilaterally engage several attorneys without notice or consultation with the guardian" to redo Appellant's estate plan, and then refused to share the Estate Planning Documents with

the guardian. Appellee's Br. at 6-7. The record shows that the same individuals and attorneys engaged by Mr. Bishop to prepare these documents were aware of Appellant's incapacitation and the trial court's orders. *See* Petition for Review ¶¶ 58 (stating that the attorney who prepared the documents was "aware of the skepticism reflected in the transcript of proceedings on May 16, 2022, by Judge Geroulo."); *see also* Petition for Review Ex. 1.

Appellant now seeks that the attorney's fees be approved for those services. The trial court stated,

> Mr. Bishop and those estate attorneys continued working on and billing for preparation of estate documents after that hearing. Their efforts were not authorized by the guardian or the court and were undertaken by them at their own risk. The fees for their services will not be approved.

Tr. Ct. Memo, 11/10/22 at 13.

We find no abuse of discretion. Appellant signed the Estate Planning Documents on August 3, 2022, Petition for Review ¶ 26, several months after the court's warning and without the guardian's approval or notice. The trial court further stated,

> This court has become increasingly concerned about the negative impact of excessive legal fees generated by Mr. Bishop and his law firm on the estate of Mr. Thompson. To date, the estate has paid Mr. Bishop and his law firm more than $158,000. There has been litigation over these fees because Mr. Bishop continues to perform legal work for Mr. Thompson that does not concern the guardianship proceedings, but has not been disclosed to the guardian and that interferes with the guardian 's ability to perform his duties. . . . The court had already entered an order on January 19, 2022, admonishing Mr. Bishop that future legal fees generated

> in pursuit of business ventures not first approved by the guardian would not be approved by the court.

Tr. Ct. 1925(a) Op. at 12. This Court is equally concerned by the actions taken by Mr. Bishop and the other estate planning attorneys in contradiction of the trial court's orders.

"A totally incapacitated person shall be incapable of making any contract or gift or any instrument in writing." 20 Pa.C.S. § 5524. The order at issue on appeal states, "as specified in Mr. Bishop's engagement letter, Mr. Bishop's representation of Henry Thompson is for these guardianship proceedings only, and that he is not authorized to provide legal representation to Mr. Thompson in any other matters." Orphans' Ct. Order, 11/10/22. Appellant contends that this was an unjustified additional determination of an issue not before the court that limited Mr. Bishop's scope of representation. The court did not abuse its discretion in making that decree because the court did not *limit* the scope of representation; the court clarified what was in the fee agreement and what the court had ordered. Mr. Bishop had been *exceeding* the scope of this representation.

This is unlike **Rosengarten**, which Appellant cites to suggest that it is a violation of the guardian's duties for Appellee to try "to deprive Mr. Thompson of his right to counsel of his own choosing." Appellant's Br. at 21, 22. In that case, this Court found that the incapacitated had a right to appointed counsel of choice, but we did not consider if any contract had been

entered into by the incapacitated and thus rejected the argument that 20 Pa.C.S. § 5524 barred legal representation not agreed to by the guardian. *Rosengarten*, 871 A.2d at 1257. We observed:

> First, we are not presently considering the validity of any contract entered by Ms. Rosengarten and [the attorney she engaged] and in fact, there is no evidence that one was made. Second, a contract entered into by an incapacitated person is merely presumed to be voidable, and this presumption is subject to rebuttal by proof that the person was not incapacitated[.]

*Rosengarten*, 871 A.2d at 1257. Here, however, the record contains evidence that Appellant, who is totally incapacitated, attempted to enter into a contract. Petition for Review ¶ 70-72, 26 (showing that services were rendered by attorneys, Appellant was provided with billing statements for those services, Appellant approves and wishes to have them satisfied, and Appellant has signed documents rendered by these attorneys). This is not only barred by 20 Pa.C.S. § 5524, but against the clear orders and warnings of the trial court that are well documented throughout this litigation. Thus, we find that the court did not err in denying Appellant's request for declaratory relief and request to authorize payment of fees, and the court did not abuse its discretion in clarifying the scope of Mr. Bishop's representation to reflect his engagement letter.

As such, because we discern no error or abuse of discretion in dismissing Appellant's petition for review, we agree with the orphans' court that there was no need for a review hearing. Accordingly, Appellant's claims fail.

Affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/18/2023